JACOB GUNTHER, Respondent, v. GEORGE F. BAKER, Appellant.

(188 N. W. 575.)

**Landlord and tenant — plaintiff tenant held entitled on sale of property to instructed verdict for items for improvements not in dispute.**

Plaintiff leased land from the defendant. The lease contained a provision under which plaintiff might place improvements upon the land which he could remove at the termination of the lease or sell to the defendant at the cost of the materials used. Defendant sold the land to a third party who, in turn, sold to the plaintiff. Under contract between defendant and third party the latter was entitled to have a portion or all of the improvements made by the tenant, and when the latter purchased from the third party the value of the improvements entered into the consideration. It is *held*:

1. On the defendant's admission that in the sale of the land to the third party he had agreed to pay for the house, certain fences, and a windmill at the price of the materials, plaintiff is entitled to an instructed verdict for the amount of the items not in dispute.

**Witnesses — correspondence between principal and agent held not privileged.**

2. Correspondence between the defendant and his agent is not privileged.

**Evidence — specific admission on which liability may be predicated held admissible, though accompanied by compromise offer.**

3. A specific admission of fact upon which a liability may be predicated is admissible, though accompanied by an offer of compromise.

**Landlord and tenant — in tenant's action for the value of improvements, instructions submitting law question as to whether defendant had agreed to purchase buildings from plaintiff was error; charge on conversion and market value, where plaintiff had expressly waived the tort, was error; failure to charge on question whether defendant sold land to third party with all of plaintiff's improvements was error.**

4. The court's instructions to the jury are examined and *held* to be erroneous.

Opinion filed May 27, 1922. Rehearing denied June 5, 1922.

Appeal from the District court of Grant county, *Lembke*, J.

Judgment modified and conditionally affirmed.

*W. H. Stutsman,* for appellant.

*Jacobsen* & *Murray,* for respondent.

BIRDZELL, C. J. · This is an action to recover the cost of certain materials used in constructing improvements upon land owned· by the 'defendant. The plaintiff was lessee under a lease giving him the privilege to erect or construct buildings and fences at his own cost, with an option to sell the improvements to the lessor at the expiration of the lease at the cost of the materials or to remove the same. The plaintiff had judgment below for $1,138.60, with interest. The defendant moved for a judgment non obstante, and the motion was denied. The appeal is from the judgment and from the order denying the defendant's motion.

Baker, the defendant, owned a section of land in Grant county which he leased to Gunther, the plaintiff, on October 31, 1917, for a period of three years. The lease contained the following stipulation:

"The first party has the privilege to erect 'or construct buildings or fences, this to be done at his own cost. Should he desire to sell these improvements made to second party at expiration of lease, these must be disposed of to second party at cost of material, or remove same at expiration of lease."

In June, 1920, Baker traded or sold the land to· one Burghart, of Willmar, Minn., reserving the 1920 crop. Burghart later came to North Dakota, and, after some negotiations with the plaintiff, Gunther, a contract for deed was executed by them,· dated August 5, 1920, under which Gunther remained in possession as purchaser of the land. At the time Burghart bought the land from the defendant he knew of the existence of the lease to Gunther. But the latter, the plaintiff in this action, claims that the land was sold to Burghart with the improvements upon it and in circumstances which entitled Burghart, as against Baker, to retain them. It is also claimed that the deal between Burghart and the plaintiff was consummated on the basis of the former's ownership of both the land and the improvements, and of the continued existence of any personal claim the plaintiff might have against the defendant, arising out of the stipulation in the lease concerning the improvements.

Some time after Gunther entered into the contract of purchase Baker wrote to the First State Bank of New Leipzig, requesting it to look after his crop interests. In reply to this request the bank suggested that it would probably be necessary for Baker to come out and settle up with Gunther, as he claimed that the value of the improvements which he had

placed upon the land was to be taken out of the crop. It was explained that Burghart claimed he had bought all of the improvements along with the land, and Baker was advised that Gunther was standing on his contract. It was further suggested that if it was impossible for Baker to come out the bank would obtain an inventory of the items for which Gunther was charging him under the contract that he might be able to check them up and close the matter through the mail. The bank further intimated that it had an option to buy the property, and it was therefore interested in keeping the improvements on the place. Following this there was considerable correspondence between the bank and Baker relating to the settlement, in the course of which Baker was given an itemized statement of Gunther's claims, amounting to $1,138.60, none of which was disputed, but Baker claimed that Burghart knew what buildings and improvements he (Baker) was to buy, and that if he (Burghart) wanted any other improvements which Gunther might have placed on the land he would have to deal with him for them. Baker admitted that he was to buy the house at $539, certain fences at $134.50, and the windmill at $110, aggregating $783.50. There were further differences arising out of the disposition of the crop, certain hail insurance money, taxes, and pasture land rental, also relating to the manner of payment, which seemed to prevent settlement on the basis of Baker's proposition, although Gunther had agreed to settle for the amount stated in Baker's proposition ($783.50). While the correspondence was being conducted, Baker was not aware of the fact that Gunther had purchased the land from Burghart. When he discovered this fact, he refused to pay on the ground that he was not obliged to pay Gunther for improvements of which he was deriving the permanent benefit. Ultimately, in January of the following year, Gunther withdrew his offer of settlement, and soon thereafter this action was brought. In the original complaint the plaintiff sued to recover only the sum which the defendant had in the correspondence, agreed to pay, namely $783.50. But an amended complaint was filed in which it is alleged in substance that by the sale to Burghart the defendant had elected to purchase the improvements under the provisions of the lease and had become obligated to pay for them at their cost, $1,139.40.

The appellant argues that, inasmuch as Burghart knew when he purchased the premises that Gunther was in possession under a lease, he must be held likewise to have known the latter's rights with respect to the improvements. From this it would follow that, as against Burghart,

Gunther could have removed the improvements; and consequently it is contended the latter was not justified in purchasing them from Burghart by including in the consideration a sum representing their value.

It is certain, however, that Gunther bought all the interest that Burghart had purchased from Baker, and Burghart testified that he had bought everything there was upon the land; that he told Baker there was any agreement between him and Gunther about the buildings, he would have to pay Gunther, and that in dealing with the latter he had said, if there was any agreement between him and Baker concerning the improvements, that was their business; that he was not concerned with any agreement between Baker and his tenant concerning his improvements; that Baker had sold him all of the property, reserving only the crops. In addition to this, the defendant, in his letter to the bank dated October 23d, said:

"And further if you will get an inventory of the actual cost of the material, placed on the land and send same to me, I will check it and advise you later what I will do. I supposed Gunther would be governed by the contract, and he should know that I had no intention of trying to beat him out of his property. The contract is as binding on my part as on his. I will most likely be up there later in the season, and until then you get the threshers' report on the grain threshed, and advise Gunther that he will get a full settlement with me before the first of the new year."

Later, upon the inventory of the material being furnished, and under date of December 10th, the defendant wrote:

"And now I will tell you what I will do with Mr. Gunther. I will take over the house with addition and finishing lumber, as mentioned in yours of November 5th:

Whole building as it stands at ............................................................$539.00
The 14 spools barbed wire and 290 posts at ................................... 134.50
And the windmill at ................................................................................ 110.00

$783.50

"The balance of the fixings, if Burghart wants hem, the can deal for. Burghart fully knew what buildings were mine, and that I was to buy the house, barbed wire fence and the windmill of Gunther and leave them on the place. I told Burghart what building there was on the place that I knew of, and if there was more they belonged to the renter."

There is no dispute in the evidence that Gunther purchased all of the interest of Burghart, and, in the light of the defendant's admission, there could be no question as to the plaintiff's right to recover $783.50. The sole controversy, therefore, relates to the difference between that sum and the amount of the verdict, $1,138.60.

The evidence presents a question of fact for the jury as to whether the version of Burghart or of Baker represents the true contract between them. The plaintiff in this case has every right against Baker that Burghart would have had had he remained the owner of the land and had Gunther exercised his option to remove the improvements at the termination of the lease. It is therefore immaterial that the defendant did not know of Gunther's purchase.

It is contended that the court erred in admitting the correspondence between the defendant and the banker, who acted as his agent, as against the objection that it was privileged and that it was offered to prove a compromise. Clearly the relation between the defendant and his agent is clothed with no privilege which precludes a communication of the defendant to the agent from being used as an admission against interest. The record shows that the trial court properly restricted the correspondence to its value as containing admissions against interest. As will be noted from the foregoing statement and quotations, it did contain specific admissions with reference to the contract between the defendant and Burghart, from whom the plaintiff derived his rights. It is elementary that specific admissions which may accompany an offer of compromise are not excluded because of the circumstances in which they are made. 2 Jones, Commentaries on Evidence, § 291 (293).

The appellant complains of the instructions to the jury. Upon a careful consideration of the objections to the charge it does appear that errors were committed which require a reversal of the judgment unless the plaintiff will consent to a remission of all in excess of $783.50, plus 6 per cent. interest from the date of the sale to Burghart. It is unnecessary to quote the charge at length. Suffice it to say that it does not properly present to the jury the issues of fact, accompanied by a statement of the controlling legal principles applicable. The instructions submit as the principal question for the jury to determine whether or not the defendant had agreed in the lease to purchase the buildings of the plaintiff. This is not a question of fact, but a question of law. The provisions of the lease are not in dispute. It charged upon the law of conversion and on the question of market value, though the plaintiff in his complaint had

expressly waived the tort, if any was committed, and there was no evidence of market value. It did not charge clearly, if at all, upon the principal question of fact, which is as to whether or not the defendant, in selling the land to Burghart, sold it with all the plaintiff's improvements or with only part of them. Upon this question the evidence is conflicting. We are of the opinion that, under the charge given, the jury could not have had a clear conception of the issues which they were to decide. Inasmuch as it is our opinion, further, that, under the evidence, the plaintiff would have been entitled to an instructed verdict for $783.50, plus 6 per cent. interest from the date of the sale to Burghart, the order will be, judgment reversed, and a new trial granted, with costs to abide the event, unless the plaintiff shall file a remittitur of all in excess of $783.50, plus interest and costs in the lower court. As so modified, the judgment will be affirmed. Appellant will recover costs on this appeal.

ROBINSON, CHRISTIANSON, and GRACE, JJ., concur.


BRONSON, J. (dissenting). This action is based upon the theory of a conversion, waiving the tort and claiming the right to recover the reasonable value of buildings and improvements upon an implied promise. The complaint alleges the construction of certain buildings, pursuant to a lease upon the land; the sale of the land together with such buildings by the defendant to one Burghart; that Burghart took possession thereof; that defendant had no right to sell such buildings; that defendant received the benefit of such buildings in the purchase price of such land which in good conscience he should pay to the plaintiff; that plaintiff elects to waive the tort and to hold the defendant for the reasonable value of such buildings upon an implied promise to pay the value therefor; that defendant elected to purchase such buildings; that in the month of October, 1920, he promised to pay plaintiff, for such buildings, $1,139.40. For another cause of action, the plaintiff alleges that in January, 1921, the matter was compromised between the parties and the defendant agreed to pay the plaintiff $783.50; that defendant failed to comply with such compromise, and the plaintiff now elects to sue the defendant for the full amount.

In order to understand the legal status between the parties, some additional facts beyond those stated in the majority opinion must be shown: Defendant, Baker, made to plaintiff, Gunther, on October 31, 1917, a

cropper's contract for a period of three years. Defendant Baker made to one Burghart, on June 18, 1920, a contract for deed covering the land, section 31, wherein he agreed to convey the same by warranty deed upon performance of the covenants, conditions, and stipulations therein contained. This contract contained no stipulation nor reference to any buildings or improvements. The record does not disclose the making of any deed from defendant, Baker, to Burghart. Burghart made to plaintiff, Gunther, on August 5, 1920, a contract for a deed covering said section, where Burghart agreed to convey the same by warranty deed upon performance of the covenants, conditions, and stipulations therein contained: This contract made no reference to any buildings or improvements. Burghart testified that he was told prior to the time of the contract with Baker that there was a renter's lease; that some of the buildings belonged to the renter; that he knew that some of the improvements belonged to the tenant. Upon direct examination he testified that he bought the buildings and improvements and took into consideration such buildings and improvements in fixing the purchase price; that he bought the real estate; that he did not know what went with the real estate in North Dakota, but in Minnesota through a warranty deed he would get the improvements. Further, he testified that after the contract was made defendant Baker mentioned that he had a contract with the renter entitling such renter to the building part; that he told Mr. Baker that such agreement was between him and the renter. The plaintiff, Gunther, testified that he never moved from the premises; that the buildings are still there; that on August 4, 1920, Burghart came out there to see him. He then told Burghart that he owned the buildings; that it was then understood and agreed that his lease provided for such buildings; that it was then understood that he should settle for the buildings with defendant, Baker, that on August 5, 1920, he bought from Burghart the land and these buildings upon it. Prior to October, 1920, and to the time of the contracts for a deed involved, there is no evidence in the record of any offer or agreement on the part of the plaintiff, Gunther, to sell the buildings, or on the part of the defendant, Baker, to buy the same. In fact, there is no evidence at all in the record, excepting the letters mentioned in the majority opinion, showing any desire to sell such buildings by the plaintiff, or any desire to purchase the same by the defendant. The first intimation of any controversy concerning the buildings is contained in a letter from the cashier, Sprecher, to defendant, Baker, dated October 20, 1920, wherein he states that Gunther is claiming, under the

contract, that Baker should pay him for his buildings on the place out of this year's crop, since the land had been sold to another man. At that time plaintiff had purchased the land through the contract for a deed from Burghart. In response to this letter, defendant Baker wrote to the bank the letter, dated October 23, 1920, mentioned in the majority opinion. The cashier, Sprecher, responded on November 5, 1920, setting up a statement of the property claimed by Gunther, aggregating in amount $1,138.90. On November 26, 1920, this cashier again wrote that plaintiff, Gunther, had left storage tickets with the bank covering one-fourth of the crops raised that year; that Gunther desired a settlement in regard to the fences and buildings before these storage checks were turned over to Baker. In this connection it is to be noted that the farm contract provided for reception of one-fourth of the crop by Baker. At this time also it is to be noted that Baker had already conveyed by contract for deed to Burghart, and Burghart likewise had conveyed to the plaintiff Gunther. On December 4th, 1920, the cashier again wrote, requesting Baker to advise concerning his plans towards cleaning the matter up. In response to these letters of November 26th and December 4th, Baker, on December 10th, wrote the letter mentioned in the majority opinion. Subsequent correspondence involved the amount to be paid and the method of payment. Finally, on January 3rd, 1921, the cashier, Sprecher, advised Baker by letter that Gunther desired to accept the offer of $783.50 in payment for the buildings upon the understanding that such amount should be paid in cash. On January 24th 1921, defendant Baker responded by stating that he had been trying to raise money to take care of this Gunther deal but he was unable so to do. He desired Gunther to take his note for the unpaid balance. Prior to this time, on January 19th, 1921, Gunther had written to Baker that settlement must be made within 10 days; otherwise his agreement to accept settlement would be cancelled. In the majority opinion it is stated "It is certain, however, that Gunther bought all the itnerests that Burghart purchased from Baker and Burkhart testified that he had bought everything there was upon the land." "There is no dispute in the evidence that Gunther purchased all of the interest of Burghart and in the light of the defendant's admissions there could be no question as to the plaintiff's right to recover $783.50." It is self-evident that the majority opinion assumes that upon the making of the contract for a deed by Baker to Burghart, a right title, and interest in the improvements erected by Gunther passed to Burghart. It ought to manifest that upon this record such assumption

is erroneous. When Burghart made this contract for a deed with Baker he had notice of the fact, and knew, that these improvements belonged to Gunther. At that time, as between Baker and Gunther, or, as between Burghart and Gunther, these improvements belonged to Gunther: No act of Baker's could deprive Gunther of these improvements without his consent. There is no evidence in the record that at that time Gunther had made, then or previously, any offer to sell such improvements to Baker or that Baker had agreed to buy them.

As a matter of fact, the farm contract between Gunther and Baker was then in force and the three-year-period thereof would not expire for many months after the date of the contract for a deed. The stipulation in such contract with Gunther provided that if he should desire *to sell* such improvements to Baker at the *expiration of lease* he should do so at the cost of material or, he should remove the same at *expiration of lease*. In accordance with the specific stipulation, the time had not then arrived for Gunther to sell, or, for Baker to buy. Can there be any question of the right of Gunther to have removed these improvements upon the termination of his cropper's contract as against Burghart who had notice and knowledge of Gunther's rights? Furthermore, on August 4th, 1920, Burghart was advised by Gunther, who was then in possession of the land, that these improvements on this land belonged to, and were owned, by him (Gunther). Nevertheless, on the next day, August 5th, 1920, Burghart agrees and assumes to sell to Gunther these very improvements, so claimed to be owned by Gunther, and concerning which he had direct information from Gunther to such effect. At that time it is manifest that Gunther had no idea nor thought that these improvements had either been sold to, or converted by, Baker: Otherwise, how could Gunther claim ownership therein? Manifestly, at that time, as between Gunther and Burghart, or Gunther and Baker, these improvements were then owned and claimed to be owned by Gunther. Then Burghart had no more right to sell the same than Baker had possessed. Manifestly, no act of conversion by Baker could have occurred when the improvements were continuously retained, possessed and claimed by Gunther and when the land was sold to Burghart and held by Burghart with knowledge that these improvements did belong to Gunther. Accordingly, the statement in the majority opinion that Gunther bought all the interests that Burghart had purchased from Baker can mean nothing more than such interest as Baker himself had in the land. The complaint is based upon a conversion with the tort waived and the right asserted to sue upon the

implied promise.    Upon the facts, it is novel indeed to contend for    a
principle of law that one may continuously claim, possess, and own prop-
erty, fixtures attached to land, and, at the same time, may assert success-
fully that such property has been converted by the mere act of the land
owner in selling the land to one with knowledge of the possessor's rights
in such fixtures.    The only justification for the award of a judgment
against the defendant has its basis in admissions made by the defendant
in letters.    These negotiations in the letters took place after the contracts
for a deed had been made between Baker, Burghart and Gunther.    Gun- ·
ther throughout was in    possession    of    his    improvements.    Gunther
throughout claimed ownership therein.    He asserted the right to recover
for these improvements against Baker at a time when Baker was not in-
formed that Gunther had purchased the land from Burghart; at a time,
further, when Baker had the right to assume that he would receive his
share of the 1920 crop, pursuant to the contract; at a time when the
question concerning the improvements was one for another agreement
between the parties, to be determined at the expiration of such farm con--
tract.    Then, Gunther had everything to gain and nothing to lose: Baker
could not deprive him of his improvements against his consent; Burghart
could not so do: They belonged .to him, pursuant to the farm contract.
He could not be dispossessed thereof except by his desire and agreement
to sell.    In one of his letters Baker expresses the sentiment that he was
sick of his wrangling; that he would do anything to close it.    This ex-
presses a thought of compromise, not of legal liability.    The deal be-
tween Baker and Burghart was in the nature of a land trade.    The
testimony of Burghart is neither    clear    nor concise concerning any ex-
press understanding that he was purchasing the improvements of the
tenant Gunther.    Furthermore, he expresses the sentiment in his testi-
mony that he was entitled to such improvements because he received
in his contract an agreement to convey by warranty deed and because a
warranty deed conveys everything attached to the land.    The record
wholly fails to prove, prior to, or at the time of, the conveyance by con-
tract to Burghart, that Gunther had agreed to sell; that Baker had
agreed to buy, or that Burghart expressly understood that he was re-
ceiving these improvements which he then knew belonged to Gunther.
The admissions subsequently made by Baker in his letters in an evident
effort between the parties to compromise their difficulties are wholly
insufficient in law or in equity to establish any conversion.    This is
further evident when the undisputed facts show that Gunther never for

a moment was deprived of these improvements and never for a moment relinquished his claim of ownership therein.. This. is not an action upon any covenants contained in the contracts for a deed. As stated before, it is based upon the theory of a conversion. In my opinion the judgment in this case simply awards to Gunther the sum of $783.50 for improvements which he never sold nor claimed to have sold and which he always retained and possessed. Manifestly, the majority opinion is an illustration of a case where one may both have his cake and eat it. The judgment should be reversed and action dismissed.