HANNAH HULTBERG, et al., Plaintiffs and Contestants, v. WILLIAM O. HULTBERG, Defendant and Proponent.

(193 N. W. 605.)

**Wills — evidence in case involving competency and undue influence held sufficient to support finding that instrument was not true will.**
In a will contest it is *held*, for reasons stated in the opinion:
1. The finding of a jury to the effect that the will offered for probate is not the true will of the testator is not contrary to, but has substantial support in, the evidence.

**Wills — contention that will is contractual as well as testamentary presented for first time on appeal not considered.**
2. The contention that a will is contractual as well as testamentary will not be considered when presented for the first time in the appellate court.

**Trial — instructions must be considered as a whole.**
3. Certain errors assigned upon instructions considered, and held without merit.

Opinion filed April 9, 1923. Rehearing denied May 3, 1923.

Trial, 38 Cyc. p. 1778 n. 73; p. 1779 n. 75, 76; Wills, 40 Cyc. p. 1023 n. 29; p. 1165 n. 87; p. 1352 n. 15.

Appeal from the District Court of McLean County, *Nuessle,* J.

William O. Hultberg appeals from a judgment refusing to admit a will to probate, and from an order denying his motion for judgment notwithstanding the verdict or for a new trial.

Affirmed.

Note.—On evidentiary force of circumstances that one benefited by a will was the draftsman thereof, or was active in procuring its execution, see note in 28 L.R.A. (N.S.) 270.
See also 28 R. C. L. p. 145; 5 R. C. L. Supp. 1517.

*Geo. P. Gibson* and *J. A. Hyland,* for appellant.

The request to make a will does not constitute undue influence. Re Cressicks (Iowa) 156 N. W. 415.

"By no unprejudiced construction of the testimony can the facts of this case be brought under any subdivision of said section." Ingwaldson v. Skrivseth, 75 N. W. 772.

In order to make out a case of undue influence, the facts must show by clear and satisfactory evidence, (1) that the testator was subject to such influence, (2) that the opportunity to exercise it existed, (3) that there was a disposition to exercise it, and (4) that the result appears to be the effect of such influence. Re Skrinsrud (Wis.) 147 N. W. 370.

Mere appeals to the affections, or the impulse of gratitude, however importunate, are not sufficient. Fjone v. Fjone, 16 N. D. 100, 112 N. W. 70.

As a contract this will would be good and valid even if the same should be invalid as a will. Torgerson v. Hauge (N. D.) 159 N. W. 6.

"A will executed under an agreement founded upon a valuable consideration is contractual as well as testamentary. In the latter aspect it may be revoked without consent of the beneficiary, but not in the former." Nelson v. Schoonover, 89 Kan. 388, 131 Pac. 147.

Undue influence to invalidate a will must be something which destroys the free agency of the testator at the time the instrument is made, and which in effect substitutes the will of another for that of the testator. Schmidt v. Schmidt (Minn.) 50 N. W. 598; Stockton v. Thorn (Minn.) 39 N. W. 143; Seebrock v. Fedwa (Neb.) 46 N. W. 650; Mitchel v. Mitchel (Minn.) 44 N. W. 885.

*McCulloch & McCulloch* and *Newton, Dullam & Young,* for respondents.

In Re Hess, 51 N. W. 615, wherein the court says, quoting from Re Storer, 8 N. W. 827:

"From the nature of the case the evidence of undue influence will be mainly circumstantial. It is not usually exercised openly in the presence of others so that it can be directly proved but the circumstances relied on to show it must be such as taken all together point unmistakably to the fact that the mind of the testator was subjected to that of some other person so that the will is that of the latter and not the former."

"That a fiduciary relation exists between testator and the chief beneficiary of the will who prepared and drew the instrument, establishes undue influence on the part of the beneficiary.

"Any relation existing between parties to a transaction wherein one of the parties is in duty bound to use the utmost good faith for the benefit of the other, is a confidential or fiduciary relation."

Johnson v. Shaver (S. D.) 172 N. W. 676; Busch v. Delano (Mich.) 71 N. W. 628; Dusley v. Gates (Mich.) 86 N. W. 959; Hughes v. Meideith (Ga.) 71 A. D. 127; Tyled v. Gardner (N. Y.) 35 N. E. 559; 40 Cyc. 1153.

"It is reversible error to exclude all the evidence and direct a verdict in a will contract where there is evidence tending to establish undue influence on the part of the beneficiary." Abbott v. Church, 288 Ill. 91, 4 A. L. R. 975; Poier v. Mfg. Co. 18 N. D. 556; McLean v. Nurnberg, 16 N. D. 144; Van Gordon v. Goldamer, 16 N. D. 323; French v. Hail Ins. Co. 29 N. D. 426.

"A contract to leave by will can be proved only by clear and satisfactory evidence, especially where the contract is oral." 20 Cyc. 1072.

CHRISTIANSON, J. This is an appeal from a judgment of the district court of McLean county, denying the probate of a will. The will in question was executed by Peter P. Hultberg on June 17th, 1908. He died April 12th, 1921, leaving surviving him his widow, one son and three daughters. He was possessed of property aggregating in value about $15,000. By the terms of the will all of this property was given to the son William, subject to a life estate to the mother (who is over seventy-five years of age) and legacies to the three daughters, aggregating $675. William was named executor without bond. In October 1921, William petitioned for the probate of the will. The surviving widow and three daughters contested such probate, asserting: (1) that the testator was mentally incompetent to make the will; (2) that the testator did not know the provisions of the will at the time he signed it and that the provisions therein were misrepresented to him; (3) that at the time he executed the will, the decedent was under undue influence, exerted by his son William. The county court admitted the will to probate. The surviving widow appealed to the district court and the case came on for trial in the district court before a jury. The

jury returned a verdict in favor of Hannah Hultberg, the surviving widow, to the effect that the will offered for probate was not the true will of the deceased. Subsequently, the proponent, William O. Hultberg, moved for judgment notwithstanding the verdict or for a new trial. The motion was denied and William O. Hultberg appeals.

On this appeal it is contended that the evidence is insufficient to sustain the verdict and that the court erred in denying the motion for a directed verdict and the subsequent motion for judgment notwithstanding the verdict, or for a new trial. It is further contended that the court erred in its instructions to the jury. These propositions will be considered in the order stated.

The decedent and his surviving widow were married in Sweden some fifty-three years ago. They came to America and settled in Minnesota about forty years ago. In 1905 they became residents of McLean county in this state. The son William accompanied his parents to North Dakota. He was at that time about seventeen years of age. He lived with his parents on the farm and was active in the management thereof. Evidence was adduced on the part of the contestants to the effect that shortly before the will in controversy was executed, William approached his father and insisted that he execute a will devising and bequeathing all his property to him (William), and that during such conversation he stated to his father, "You got to make the property over to me or I will quit you." The evidence shows that before coming to America the deceased was assaulted and robbed; that his assailant hit him on the head with a club and severely injured him and that he never fully recovered from such injury. The evidence further shows that before coming to North Dakota he was injured in an accident in Minnesota, at which time he received severe injury in and about his head. While the evidence shows that the decedent in a sense handled his own affairs, it also shows that he was a man of rather weak mind, who, in the management of his affairs, leaned largely, if not wholly, upon his son William. The decedent could neither speak nor read the English language.

According to the testimony of the appellant, the decedent was not present at the time the will was prepared. The appellant testified that he went to the city of Washburn and procured the services of the then county judge in the preparation of the will. The county judge who pre-

pared the will testified,—and his testimony is undisputed,—that he received no directions whatsoever from the testator and so far as he knew the testator was not present at the time the will was prepared, but that he prepared the will entirely from the directions which he then received from the appellant. After the will had been prepared, appellant took it home. He testified that he read it to his father and mother, translating its provisions into Swedish. On this point, he was contradicted by his mother, who stated that he did not read or explain the will to them.

Some time afterwards, the testator accompanied by the appellant, went to a neighboring town, where the will was signed by the testator in the presence of the subscribing witnesses. The subscribing witnesses did not understand Swedish and it is undisputed that the testator did not have a sufficient knowledge of English so that he, personally, could read or understand the will which he signed. There is no contention that any conversation was had between the testator and the subscribing witnesses. According to their testimony, it was the appellant and not the testator who asked them to sign as subscribing witnesses. In other words, so far as the execution of the will is concerned, it is undisputed that the son William, the proponent of the will, was the dominating factor from the beginning to the end. And there is no evidence, aside from the testimony of the appellant, tending to show that the testator knew the contents of the will, or even knew that he was executing a will, at the time he signed the instrument in controversy here.

In these circumstances, we are not prepared to say that the evidence here did not justify the submission of the case to the jury, or that the verdict is contrary to the evidence. We have a situation here where the testator at the time of the execution of the will and for a long time prior thereto had been in a large measure, if not wholly, dependent upon the advice and guidance of the proponent; where the proponent was the principal actor in procuring the preparation and execution of the will, and was the principal beneficiary under it; where the testator was an old man of subnormal rather than normal mental power, and unable to speak or read the language in which the will was written. The authorities are generally agreed that circumstances like these cast upon the proponent of a will the burden of showing that the testator knew the contents of the will at the time he signed it. See authorities col-

lated in note in 28 L.R.A.(N.S.) 271; Keller v. Reichert, ante, 74, 189 N. W. 692. The only evidence adduced by the appellant in this case tending to show that the testator knew the contents of the will at the time he executed it, was appellant's own testimony. On this question, however, appellant was contradicted by his mother. The credibility of witnesses and the weight of their testimony were questions for the jury. Keller v. Reichert, supra. The jury by its verdict determined these questions adversely to the appellant. The trial judge, who saw the parties and witnesses and heard their respective stories, refused to interfere. This court may not substitute its judgment for the judgment of either the jury or the trial judge, but is limited to a review of the correctness of the rulings made below. And we are agreed that upon the record here it cannot be said that the verdict was contrary to or without substantial support in the evidence.

It is contended that the will under consideration was contractual as well as testamentary; that William O. Hultberg would have left his parents if the will had not been made; that the execution of the will and the benefits conferred upon William O. Hultberg by the provisions thereof induced him to remain at home and aid his parents in operating the farm. In our opinion the appellant is not in position to raise that question. He elected to enforce the instrument as a will and not as a contract. He instituted a proceeding to have the instrument probated as a will. The theory now suggested that there was a contract to make a will, and that the instrument should be enforced as a contract even though denied validity as a will was in no manner presented in the trial court. The appellant must adhere to the theory on which the case was tried in the court below, and cannot present the question now urged for the first time in the appellate court. Ugland v. Farmers & M. State Bank, 25 N. D. 536, 137 N. W. 572; 3 C. J. 718, et seq.

The trial judge, among others, gave the following instructions to the jury:

"With reference to the second question, gentlemen, and that is, as I have heretofore explained to you, was the testator Peter P. Hultberg at the time of the making of such will free from fraud or from undue influence? *Did the deceased Hultberg make and execute the allowed will in all its provisions of his own free will and volition so that it now expresses his own wishes and intentions, or was he constrained or coerced*

*through the undue influence, restraint or coercion of another or others in making his will to act against his own desire and intention as regards the disposition of his property or any part of it?* Did he at the time that he signed the alleged will and executed the same know what it contained, and did he intend that which the said will did with the property disposed of by him by means of the will?

"I charge you, gentlemen of the jury, that upon this second question, that is, as to the matter of the freedom of the testator from fraud or from undue influence, the burden is upon the plaintiffs and contestants to show that the making of the will was obtained by undue influence or that it was made by Peter P. Hultberg under a misapprehension and mistake as to the contents of the will, and that he executed it at the time it was executed believing it to be other than that which it really was; and in order to defeat the will and to find for the plaintiffs and contestants in this case it must appear to your satisfaction by a fair preponderance of the evidence that there was such misapprehension or fraud or that there was undue influence employed. To constitute undue influence it must appear to be such influence or restraint as caused the execution of the will by the decedent against his own preference or desire in the matter.

*"I charge you, gentlemen, that no general rule can be laid down as to what constitutes undue influence in a case of this kind further than this; that in order to make a good will a man must be a free agent and feel at liberty to carry out his own wishes and desires, and any restraint, force or intimidation brought to bear upon the testator which he has not the strength of mind or will to overcome, so as to coerce him against his desire and purpose in the making of the will or any of its provisions, is undue influence within the meaning of the law;* and whether such undue influence existed in this case must be determined by you gentlemen from a consideration of all the evidence in the case in view of the law which I am laying down with reference to that matter for your guidance."

Error is assigned on the italicized portions of these instructions. It will be noted that the instructions so assailed are merely portions of instructions dealing with the particular subject to which they relate. In fact the instructions quoted above are merely a portion of the charge dealing with these particular subjects. Elsewhere in the charge explicit

instructions were given on the subject of undue influence, the force of the implication resulting where the beneficiary under a will is active in the preparation and execution thereof, and the effect of such implication upon the "burden of evidence." No complaint is made of these other instructions, and they appear to be eminently fair to the appellant. It is elementary that the charge to the jury must be considered as a whole. It is not apparent that the instructions above quoted are erroneous, if considered by themselves alone: and when considered as a whole, the charge seems eminently fair to the appellant.

The judgment and order appealed from are affirmed.

BRONSON, Ch. J., and BIRDZELL and JOHNSON, JJ., and BURR, Dist. J., concur.

Mr. Justice NUESSLE, being disqualified, did not participate, Honorable A. G. BURR, Judge of the Second Judicial District, sitting in his stead.