[File No. 7089]

R. A. GRANT, Appellant, v. PETER JACOBS, Respondent.

(32 NW2d 881)

Opinion filed May 14, 1948.   Rehearing denied July 9, 1948.

*Murray & Murray,* for appellant.

*Crane & Crane* and *R. J. Bloedau,* for respondent.

4

GRONNA, District Judge. This is an action for breach of contract wherein the defendant's counterclaim is also based on breach of contract.

The jury returned a general verdict for the defendant, Peter Jacobs, in the sum of $221.52.

The plaintiff made a motion for a new trial which was denied. The motion was based on the following grounds to-wit:

First: Insufficiency of the evidence to sustain the verdict, and that the verdict is based upon passion and prejudice of the jury;

Second: That the verdict is excessive;

Third: Errors of law occurring at the trial.

On March 12, 1941, the plaintiff, as owner and landlord, and the defendant and his uncle, K. A. Jacobs, as tenants, entered into a written farm contract or lease by the terms of which the defendant and his uncle were to farm the plaintiff's farm of 960 acres in Hettinger County, which farm will hereafter be referred to as the "Grant farm". In April of 1941, the plaintiff, as the agent of Mrs Kincaid, the owner, entered into an oral farm contract or lease with the defendant, alone, by the terms of which the defendant was to farm the "Kincaid farm", 160 acres in Hettinger County. By the terms of both of said contracts, the landlord was to receive one-half share of the crops and the tenant was to receive the other half.

Plaintiff's complaint alleges that his damages totaled $2,141.04, of which defendant admits $83.54 for the following items, namely: tin $1.00; gas and oil $8.98; worm medicine $7.00; trucking 1,802 bushels of grain at 3 cents per bushel, $54.06. Defendant also admits owing $12.50 for the rental of pasture on the Grant farm.

However, the defendant denied that he was indebted to the plaintiff for the remaining items, which total $2,057.50. At the trial there was a sharp conflict in the testimony. The evidence may be summarized in particular as to the several items alleged in plaintiff's complaint, as follows:

When the defendant left the Grant farm in March, 1942, he removed his own woven wire which he had wired on the outside of the fence posts. The plaintiff testified that the defendant had also taken down the two lower barbed wires from the inside of the posts and left the wires on the ground and it cost the plaintiff $50.00 to make fence repairs. The defendant testified that he had not removed any of the barbed wires.

Plaintiff testified that he paid $100.00 for cleaning manure

out of the barns and yards on the Grant farm after the defendant left. The defendant testified that although there was not a great deal of manure on the place when he moved on, that when he moved off it was about the same.

Plaintiff testified that because of improper harvesting methods defendant had damaged the oats crop on the Grant farm and that plaintiff's one-half share so damaged was 450 bushels, market value $135.00. The defendant testified in detail as to the manner in which he had harvested the oats, and the jury was justified in finding that such harvesting methods were proper.

The plaintiff offered testimony in support of his allegation that by reason of improper harvesting methods the entire crop of 68 acres of crested wheat grass on the Grant farm was lost by rain, followed by rot, to the damage of the plaintiff's one-half share in the sum of $1,000.00. The defendant admitted that the entire crop was lost by rot, but defendant testified that he had followed the plaintiff's instructions in cutting the crested wheat grass with a mower and then cocking it with a hand fork. The fall of 1941, being rainy and wet, defendant turned the cocks with a hand fork twice and part the third time. Nevertheless, when defendant tried to thresh it, the seed had rotted to such an extent that the crop was worthless.

Plaintiff testified that he had such rotted grass removed at a labor cost of $65.00. Defendant denied any obligation for the cost of removal.

The plaintiff alleged that the defendant had orally agreed to pay $185.00 for pasturing defendant's sheep on the Grant farm. This the defendant denied and instead defendant admitted that only $12.50 was owing for this item.

In 1941 the defendant put up hay on the Grant farm. Each of the parties was entitled to a one-half share. The plaintiff, Grant, testified that the defendant had fed Grant's one-half share to defendant's livestock. Defendant testified that he had not agreed to buy Grant's hay and also denied that his livestock had eaten any of Grant's hay. Plaintiff claimed only $250.00 for the hay, although he testified its reasonable value to be $500.00.

The defendant admitted having a conversation with Grant

about buying Grant's one-half share of 86 acres of corn in the field on the Grant farm, but he denied Grant's allegation and testimony to the effect that he had agreed to buy Grant's share of the corn. Defendant also denied that his livestock or sheep had eaten any of such corn. Plaintiff claimed $250.00 for this item.

For the most part, the breaches alleged above concern only the Grant farm, which was the place on which the defendant lived.

Appellant's attack is directed mainly against the verdict on the counterclaim.

For his counterclaim, the defendant alleges that on or about September 2, 1941, 3,020 bushels of wheat were harvested from the Kincaid farm, of which total defendant only received 1,135 bushels, or 375 bushels less than the agreed one-half share, and the plaintiff took 1,885 bushels. Thereafter, about September 20, 1941, 325 bushels of wheat were harvested from the Grant farm, of which the defendant admits receiving 218 bushels, or 56 bushels more than his agreed one-half share. Thus, the shortage from the Kincaid farm was reduced to the amount of 319 bushels, for which defendant asks damages at the rate of 82 cents per bushel in the sum of $261.58.

Defendant's counterclaim further alleges that the plaintiff failed and refused to pay his share of the threshing bill in the sum of $140.00.

Thus, allowing plaintiff's claims in the sum of $83.54, the defendant asks for damages in the sum of $318.04.

The contentions of the appellant, Grant, are concisely stated as follows:

"1. That the defendant failed to prove absolute and complete ownership of the grain in himself. On the contrary he proved joint tenancy and joint ownership of the tenant's share of the grain, the other joint tenant being K. A. Jacobs.

2. No proof of any particular date of conversion; in fact, no proof of any conversion, the proof showing that the defendant waived conversion, if any.

3. No proof of grade and quality of grain alleged to have been

converted; no proof of the market value of any grain at the time or place of the alleged conversion.

4. Miscellaneous errors of law."

The respondent, Peter Jacobs, meets and refutes the four contentions of appellant as follows:

"1. That respondent's entire ownership of the grain was adequately established.

2. That respondent's counterclaim was for damages for breach of contract and not for conversion.

3. That there is ample proof of grade, quality and market value of the grain, and that most of such evidence was stipulated.

4. That there were no errors of law."

We shall now consider the four contentions of the appellant, in the order set forth. The appellant, in contending that the respondent and K. A. Jacobs were joint owners of the wheat, the value of which is sought in respondent's counterclaim, is thereby departing from and not adhering to either the allegations of his complaint or the theory on which he tried the action. Both the appellant and respondent based their pleadings and conducted the trial of the case upon the premise and theory that the respondent, Peter Jacobs, was the sole party in interest and that K. A. Jacobs was not concerned. Furthermore, that was the premise and theory upon which the court instructed the jury. Appellant in his complaint sought to hold the respondent, alone, liable for all damages allegedly arising out of breaches of contract, and respondent defended and interposed his counterclaim on the same theory. Appellant did not at any stage of the trial move or suggest that K. A. Jacobs be made a party to the action. He replied to the counterclaim on its merits, and both parties proceeded with the trial of the case upon the supposition and understanding that respondent alone was responsible to appellant, if at all, and that the counterclaim was his alone.

It is a well settled rule of law that the appellate court will not review a case on a theory different from that on which it was tried. Kelsch v. Miller, 73 ND 405, 15 NW2d 433, 155 ALR 1186; Hultberg v. Hultberg, 49 ND 761, 193 NW 605.

Then too, respondent introduced evidence at the trial from which the jury could find that he, alone, had the entire proprietary interest in the counterclaim. Defendant admitted that he had received more than his one-half share of the wheat from the Grant farm but contended that he had not received his one-half share of the wheat raised on the Kincaid farm. The facts are clear that K. A. Jacobs was not a party to the oral lease of the Kincaid farm, and thus he did not have any proprietary interest in the wheat raised thereon. As for the remaining item in the counterclaim, for reimbursement from plaintiff, for one-half of the threshing bill, it is sufficient to say that the evidence shows that the defendant, and not his uncle, K. A. Jacobs, paid such threshing bill. Obviously, K. A. Jacobs would not be entitled to be reimbursed for something he had not paid for.

Appellant's point No. 2 may be disposed of upon the ground that respondent's counterclaim is based upon the theory of breach of contract by the appellant and not upon the theory of conversion. Nowhere in the defendant's answer and counterclaim and nowhere in the Judge's written instructions to the jury does it appear that the defendant charged the plaintiff with tortious conversion. On the contrary, it is a fair construction of the defendant's counterclaim that it alleges a cause of action for breach of contract against the plaintiff. This view is corroborated by the circumstances that the counterclaim was concerned with the same two farm leases upon which plaintiff predicated his cause of action for breach of contract and that during the trial defendant proceeded on the theory that his counterclaim was based upon breach of contract. An analogous case supporting the respondent's view is Carlson v. Davis, 45 ND 540, 178 NW 445. Also see 41 Am Jur 339, Pleading, § 72; 18 Am Jur 161, Election of Remedies, § 44, and 57 CJ 425, Setoff and Counterclaim, § 77; Strong v. Nelson, 38 ND 385, 165 NW 511.

Appellant's point No. 3 is disposed of in the above consideration of point No. 2, and by the evidence in the case. Defendant introduced evidence, which was undisputed, that the wheat harvested from the Kincaid farm weighed 58 pounds per bushel, was graded No. 1 Dark Northern and was of the Thatcher vari-

ety and that the market value at Mott, North Dakota, on September 2, 1941, was 82 cents per bushel. Respondent contends that September 2, 1941, is the date of the breach of contract because on that date on the Kincaid farm, appellant took possession of 375 bushels of wheat belonging to respondent and exercised his dominion over it to the exclusion of the respondent, in direct violation of the contract terms with respect to division of crops. Then too, counsel for appellant agreed during the trial that the date the grain was taken was the material date in determining the market value of the grain. In point, in this respect, is Fargo Loan Agency v. Larson, 53 ND 621, 207 NW 1003.

During the trial appellant consented and stipulated to the evidence of market value and price, objecting only on the ground that "market value" was not material in the case. Now he contends that it is material and that the verdict should be reversed because the "market value" was not sufficiently proven. As was held in Fargo Loan Agency v. Larson, supra, the appellant cannot on appeal raise, for the first time, objections to the evidence of market value.

Under point 4, appellant urges that miscellaneous errors of law were committed during the trial; that the court erred in the following paragraph of its instruction to the jury:

"The measure of damages insofar as the Defendant's counterclaim is concerned, would be the reasonable market value of whatever amount of wheat, if any, that the plaintiff kept and retained, over and above whatever share of the crop that he was entitled to, and the amount of Plaintiff's share of the thresh bill, if any, which the Plaintiff did not pay, if the evidence shows that he did not pay the same."

Appellant's reasoning behind his charge of error in such instruction is that:

"It eliminates the essential factors constituting conversion. It is erroneous because it eliminates the time and place of conversion; it eliminates the time and place of value; it eliminates the kind of wheat. Under this instruction the jury could be warranted in bringing in a verdict against Grant without any proof of conversion, without any proof of market value of a

particular grade and quantity of wheat at a certain time and place. It eliminates the feature of a division of the grain."

Thus, again, appellant's reasoning is predicated upon the false premise that defendant's counterclaim charges the plaintiff with "conversion".

With respect to the reasoning that the instruction eliminates the time and place of value and of the kind of wheat, it is sufficient to say that the evidence is undisputed, not only as to the market value but also as to the time and place of such value and the kind or variety of wheat involved.

The instruction is correct as far as it goes, that is to say, it is correct that the measure of damages would be the market value. There was no occasion for the court to instruct further as to what items should be considered in determining the market value inasmuch as the evidence was undisputed as to the time, place and amount of the market value, namely, 82 cents for the grade and variety of wheat involved. But even though this be regarded as an instance of nondirection, the appellant cannot complain thereof inasmuch as he failed to submit his request for additional instruction at the trial, and for the first time, on this appeal he makes the charge that there should have been additional instructions. It is a well established rule of law that where a party has made no request for any further or additional instructions, such party cannot upon appeal assign error for nondirection unless it amounts to misdirection. McGregor v. Great Northern R. Co. 31 ND 471, 154 NW 261, Ann Cas 1917E 141; Huber v. Zeiszler, 37 ND 556, 164 NW 131.

Another paragraph of the instructions to the jury is regarded as erroneous by the appellant, namely:

"When you have ascertained the amount, if any, that is due to the plaintiff on his claim, and have determined the amount, if any, that is due to the defendant under his counterclaim then you will deduct the smaller amount from the larger amount and return your verdict for the party to whom you find the difference is due."

The reasoning behind appellant's contention of error in such instruction is that:

"It is not definite and certain; it eliminates the essential fac-

tors which constitute conversion, and the legal measure of damages."

Again, appellant fails to recognize that defendant's counterclaim is based upon the theory of breach of contract and not upon conversion.

Errors are also assigned because of the refusal of the trial court to allow the plaintiff and one of his witnesses, Skarvet, to restate portions of a conversation between the plaintiff and the defendant, in the presence of Skarvet, subsequent to the harvest of 1941. In our opinion, the rulings of the trial court were correct inasmuch as he merely held inadmissible conversations concerning compromise negotiations between the parties. An unaccepted offer of compromise should not be received in evidence as an admission. Grabau v. Nurnberg, 39 ND 57, 166 NW 508; Reagan v. McKibben, 11 SD 270, 76 NW 943. Subsequently the court ruled admissible admissions by the defendant with respect to independent facts, which admissions were made during the course of such negotiations. Grabau v. Nurnberg, 39 ND 57, 166 NW 508, supra; Gunther v. Baker, 48 ND 1071, 188 NW 575.

Plaintiff's contention that the verdict is excessive is unfounded. The respondent introduced evidence upon which the jury would have been justified in returning a verdict in the total sum of $318.04, namely, $140.00 for threshing 319 bushels of wheat at 82 cents a bushel or $261.58 less $83.54 conceded to the plaintiff. The actual verdict for the defendant was only $221.52.

The jurors were the judges of all questions of fact in the case. To the jury belonged the duty of weighing the evidence under the court's instructions and of determining the credibility of the witnesses. The trial judge correctly refused to invade the province of the jury. Gunder v. Feeland, 51 ND 784, 200 NW 909.

The judgment and the order denying the motion for a new trial are affirmed.

CHRISTIANSON, Ch. J., and BURKE and NUESSLE, JJ., and GRIMSON, District Judge, concur.

BURR and MORRIS, JJ., did not participate.