CHARLES DALE, Appellant, v. PIERSON-
BREWEN COMMISSION COMPANY, Respond-
ent.

**Kansas City Court of Appeals, January 9, 1912.**

1. **WARRANTY IMPLIED: Live Stock: Contagious Disease:**
   **Damages.** Plaintiff bought a number of sheep for breeding
   purposes, and shipped them to his farm where many of them
   died in a short time of a contagious disease of the mouth and
   feet. Some of the sheep had sore mouths at the time of the
   sale, but the seller assured the buyer that it did not amount to
   anything. The seller was informed, when the sale was made,
   of the purpose for which the animals were bought. *Held*, that
   as the sheep were sold for a specific purpose, there was an
   implied warranty that they were suitable for that purpose.

2. ——: ——: ——: **Latent Defects: Fraud.** The sale
   of animals which the seller knows, but which the purchaser
   does not, have a contagious disease, should be regarded as a
   fraud when the fact of the disease is not disclosed.

3. **FACTOR AND BROKER: Disclosing Principal.** Where there
   is nothing to show that the sellers had disclosed their principal
   except a notation on a weight-bill, they will be responsible as
   principals.

Appeal from Jackson Circuit Court.—*Hon. Herman
Brumback*, Judge.

REVERSED AND REMANDED.

*A. F. Sherman* and *W. V. Thompson* for appellant.

*Thurmond & Farrar* for respondent.

BROADDUS, P. J.—This is a suit on an alleged
warranty. For convenience we adopt in part appel-
lant's statement of the case, to-wit: "This action was
brought to recover $776.36, $526.36 of which was for
damages alleged to have resulted from a breach of
warranty as to a certain lot of sheep and the further
sum of $250 as damage for infection of certain pasture

wherein said sheep were confined. A demurrer to plaintiff's evidence was sustained. The evidence discloses the following state of facts: One Charles Dale, a farmer, living near Weston, Missouri, desiring to purchase a number of sheep, came, on or about July 29, 1909, to Kansas City, Missouri, and went down to the Stock Yards and approached one W. T. McIntire, a representative of the firm of Pierson-Brewen Commission Co., and stated to him that he wanted to buy a double deck car load of sheep, which said sheep he desired to take to his farm near Weston, and that he wanted about one hundred ewes for breeding purposes and the balance to fatten for the market. Mr. McIntire replied that he had just the sheep he (Mr. Dale) wanted, and thereupon took Mr. Dale over and showed him the sheep in question. Mr. Dale called the attention of Mr. McIntire to the fact that there were some sore mouthed sheep in another bunch which were being offered to him to fill out his carload, whereupon Mr. McIntire took Mr. Dale around the yards and showed him several bunches of sheep which had sore lips and said it didn't amount to anything; further, it was a condition prevalent among sheep in the yards at that time of the year, and was caused from sandburrs being in the hay, or by change of food and that it did not amount to anything; that the sheep were all right. So Mr. Dale, relying upon the representations and assurances of Mr. McIntire, purchased the said sheep and as consideration therefor paid, by check to the Pierson-Brewen Commission Company, the sum of $729.86, being the fair market value of good sound sheep for the purpose stated, and loaded them into a car and took them to his farm near Weston, and placed them on pasture. On the road home Mr. Dale noticed that some of them had sore mouths, and after some four or five days they began dying off from time to time until twenty-three had died within two weeks of the time of their arrival. He therefore loaded them

into a car and shipped them to St. Joseph, Mo. Upon their arrival in St. Joseph they were immediately put into quarantine on account of having a contagious and infectious disease known as the 'lip and limb disease.' Plaintiff was told by the Government Inspector that he could sort out what sheep there were that did not show any lesion on the lips or limbs and take them back to his farm. Plaintiff thereupon, in company with the Government Inspector, went to the quarantine pens to look over the sheep and after doing so came to the conclusion that the sheep should be turned over to Swift & Company, subject to post-mortem examination, and Dale was to receive what they were worth after they were killed. As a result, plaintiff received $203.50 for 166 head. As a result of having the diseased sheep in his pasture it was rendered unfit for use and plaintiff was further damaged in the sum of $1.50 per acre. Demand was made upon defendant for payment of the damage, but payment was refused, whereupon this suit was brought."

At the close of plaintiff's evidence the court instructed the jury to find for defendant. From the judgment plaintiff appealed. In addition it further appeared when the sheep were weighed from defendant as seller to plaintiff there was a notation on the scale ticket that the owner was M. & G. But the check given in payment was made to defendant. It is contended by appellant as the sale of the sheep was for a specific purpose there was an implied warranty that they were suitable for that purpose. It is said that: "In a sale of personal property for a specific purpose there is an implied warranty that it is fit and suitable for that purpose." [The New Birdsall Co. v. Keys, 99 Mo. App. 458; Comings v. Leedy, 114 Mo. 478 and other cases.] In our opinion the purpose for which the sheep were bought was for a special purpose, that is to say, for breeding purposes. As the sheep were inflicted with a mouth and foot disease which proved fatal in

many instances and besides was contagious they were not fit for that special purpose, although they may have had a general value. The respondent contends that this rule does not apply to live stock but we think it does.

It is a general rule, a warranty will not cover defects visible to the senses or defects known to the buyer, unless the vendor undertakes to warrant against such obvious defects. It is said that: "If the defects in the property sold are patent and might be discovered by the exercise of ordinary attention, and the buyer has an opportunity to inspect the property, the law does not require the vendor to point out the defects." [Grigsby v. Stapleton, 94 Mo. 423.] The disease of the sheep was obvious and was discovered by the buyer himself but it is clear that he did not know that the disease was dangerous and contagious, but was assured by respondent's agent that the sheep were all right; that their condition was the result of sandburs in the hay or change of food and that they were all right. Was this a concealment of a latent defect? The agent of respondent by his representations concealed from the appellant the latent deadly and contagious nature of the disease of which the jury might infer he had knowledge. Under such circumstances the agent committed a fraud upon appellant. "The sale of animals which the seller knows, but which the purchaser does not, have a contagious disease, should be regarded as a fraud when the fact of the disease is not disclosed." [Grigsby v. Stapleton, supra, and authorities there cited.] This is not a case which falls within the rule of *caveat emptor* as respondent seems to think. And it was not necessary that appellant give respondent notice and to offer to return the property. He had the right to keep the sheep and sue for his damages. [Brown v. Weldon, 99 Mo. 564; Brewing Co. v. McEnroe, 80 Mo. App. 429; June & Co. v. Falkinburg, 89 Mo. App. 563.]

It is said that a factor is not liable to third persons unless he fails to disclose his principal. [Irvin v. Thompson, 27 Kan. 634.] And: "The mere fact that defendants were acting as auctioneers is not of itself notice that they were not selling their own goods, and they must be deemed to have been vendors, and responsible as such for title of the goods sold, unless they disclosed at the time the name of the principal." [Schell v. Stephens, 50 Mo. 375.] Because the words "Owner M. & G." were on the weight-house ticket we do not think was sufficient evidence to justify the court as a matter of law in saying that respondent's agent had disclosed the ownership of the sheep. It was a question at most for the jury. There is nothing in the record to show that respondent at any time during the transaction said or did anything to disclose a principal except the notation on the weigh-bill. For the reason assigned the cause is reversed and remanded with directions that the same be tried upon the theory indicated in this opinion. All concur.