[File No. 6013.]

EVELYN D. HARMON, Respondent, v. THEO. HAAS and Katherine Haas, Defendants.

THEO. HAAS, Appellant.

(241 N. W. 70.)

Opinion filed February 1, 1932.   Rehearing denied February 18, 1932.

*Heder & Lauder,* for appellant.

*Kvello & Adams* and *A. L. Parsons,* for respondent.

Burr, J. August 30, 1929, A. L. Harmon was driving westward on highway No. 13 in the immediate vicinity of Wyndmere. Having some tire trouble, he stopped his car on the north side of the road, close to the ditch, and while at the rear of his car fixing the tire he was killed by a car belonging to Theo. Haas and driven by his daughter, Katherine Haas.

The plaintiff is the widow of the deceased. She says: that Katherine Haas drove the car in a careless, heedless and wanton manner "without due caution and circumspection and at a speed so great as to endanger the person and property" of the deceased upon the highway; that the lamps of this car were "covered with dirt, grime and oil so that the light was dimmed to such an extent that the light was not visible and could not be seen for a distance of two hundred feet ahead" and that the death of her husband was caused by the carelessness and negligence of the said Katherine Haas; that at the time of this accident Katherine Haas was a member of the family and household of Theo. Haas and living in his home; that the car was owned and kept by the father for the purpose and pleasure of himself and his family, including the daughter Katherine, that said car was being so used by Katherine Haas at the time of the accident; that the father knew his daughter was using the car at said time for such purpose and that Katherine was driving the car with his permission and consent and as part of his business and pleasure.

Theo. Haas admits he was the owner of the car and that there was an accident in which A. L. Harmon was killed; but says this accident

was caused by the negligence of the said deceased in stopping his car where he did and either not equipping his car "with a rear light visible in normal atmospheric conditions at a distance of 500 feet to the rear;" or that if it was so equipped it either was not lighted or that he had placed his body in front of the rear light so as to make the car invisible to any one coming from the east; that though Katherine was driving the car at the time of the accident she was at said time "over the age of twenty-one, not dependent upon this defendant in any manner and was not at said time a member of the family of this defendant or the agent of this defendant; that said Katherine Haas at said time was not using the said automobile for the business and pleasure of the defendant, Theo. Haas, and was not using said automobile for the business and pleasure of the family of the defendant—and was not driving said automobile at said time as a part of the business and pleasure of the defendant,—that at the time mentioned in the complaint the said automobile of this defendant was equipped with the usual appliance including brakes, and headlights and that said brakes and headlights were in first class condition and in good working order," that his daughter was an experienced driver and driving in a careful and prudent manner, but that on or about the time of the accident she met an automobile coming from the west with glaring headlights, and thus was momentarily partially blinded as the car passed and threw up a cloud of dust; that she slowed down to the rate of speed of less than five miles per hour and at this time collided with the car of the deceased.

Katherine Haas answered with practically the same kind of an answer, alleging that while driving the car she was driving it for her own pleasure and on her own business, and not for the pleasure or on the business of her father.

The case was submitted to a jury who returned a verdict in favor of the plaintiff. Judgment was entered thereon and Theo. Haas made a motion for judgment notwithstanding the verdict or for a new trial. This motion was overruled and he appeals.

Appellant says there are but three issues involved in this appeal:

First: "Was the instruction of the trial court as to the liability of Theo. Haas a full, true and correct statement of the law?"

Second: "Was it prejudicial error for the trial court to admit

testimony as to the transfer of property by the defendant, Theo. Haas, over the defendant's objection?"

Third: "Was there sufficient evidence to sustain the verdict of the jury?"

The portion of the charge, said to be involved in the first issue is as follows:

"I instruct you that the law of principal and agent, and master and servant, is not confined to business transactions. When the owner of an automobile directs, or permits, another to operate such car under such circumstances that the one who operates such car may be deemed to perform a service for the owner, whether such service is one of profit to the owner, or to promote for the owner the pleasure or wish of a guest of the owner, then the person operating the automobile will be the agent or servant of the owner, and the owner would be liable for the negligence of the person operating the automobile."

The appellant does not urge this is an incorrect statement of law but says it is an abstract proposition of law not applicable to the facts in the case, "and could lead the jury to the inference or belief that any one driving the owner's car for a guest of the owner would be (doing) a service for the owner;" and, further, "because it infers that the abstract propositions therein set out are the facts in the case."

Appellant cites Welter v. Leistikow, 9 N. D. 283, 83 N. W. 9; and Polluck v. Minneapolis & St. L. R. Co. 45 S. D. 210, 186 N. W. 830, in support of his contention.

These cases are not applicable for the simple reason that this instruction is not merely an abstract proposition of law, but states law applicable to the case. Just prior to giving this instruction the court charged the jury that before holding the appellant responsible for the negligence of his daughter it must appear, by a fair preponderance of the evidence, that she was using her father's automobile "with either express or implied authority from Theodore Haas, as the agent or servant of said Theodore Haas, and in serving some purpose for which the said automobile was purchased and kept by said father, the defendant, Theodore Haas."

In a later portion of the charge the court said:

"It is the contention of the defendant, Theodore Haas, that at the time of the accident the automobile in question, and driven by the

defendant, Katherine Haas, was not being driven and operated upon said highway for any purpose of the defendant, Theodore Haas, or for any purpose for which said automobile was procured and kept by said defendant, Theodore Haas; and further that the defendant, Katherine Haas, was not, at said time, acting as either the agent or servant of the defendant, Theodore Haas."

And again the court said:

"The burden of proof is upon the plaintiff to establish, by a fair preponderance of the evidence, to your satisfaction, that at the time in question Katherine Haas was using said automobile with either express or implied authority from Theodore Haas; and in so using it was serving some purpose for which said automobile was procured and kept by the defendant, Theodore Haas; and that said Katherine Haas was, in driving said automobile, acting as the agent or servant of the father, Theodore Haas, before you would be entitled to find a verdict against the defendant, Theodore Haas."

Appellant says that "nowhere in the instructions is appellant's contention that the defendant, Katherine Haas, was driving for Josephine Haas, set out. Josephine Haas was not referred to at all in any instructions in regard to the agency."

The issues upon which the case was tried were framed by the pleadings. The plaintiff in her complaint, charged that the car was owned by the appellant, was operated by the daughter, with knowledge and consent of the father and in furtherance of some purpose for which the father kept the car. The appellant states that it was operated by his daughter Katherine for her own purpose and not for any purpose of his; and Katherine, in her answer, says the same thing. Nowhere in the pleadings is it alleged that the car was operated for Josephine or that Katherine Haas was driving it for Josephine, or as agent for Josephine. Consequently the court was not in error in omitting to refer to that feature.

There is a difference between nondirection and misdirection and unless the former amounts to the latter it is not reversible error. If a party desires more complete and specific instructions on any special point it is his duty to request such instruction. Huber v. Zeiszler, 37 N. D. 556, 164 N. W. 131; Andrieux v. Kaeding, 47 N. D. 17, 28, 181 N. W. 59; Farmers Exch. State Bank v. Iverson, 51 N. D. 909,

201 N. W. 509. "It is not compulsory upon a trial court to present every issue that may be raised by the testimony, without a request directing the attention of the court thereto, so long as the main issues, the principal contentions under the pleadings are intelligibly defined and submitted." North Star Lumber Co. v. Rosenquist, 29 N. D. 568, 574, 151 N. W. 289. If appellant wanted an instruction construing his liability in the light of Josephine's relation to the transaction he should have requested it. No complaint is made that the court did not give such instructions as were requested.

The second issue deals with testimony relating to the transfer of his real property made by appellant immediately after the accident.

The record on this point is very brief—but one question directed to the appellant, as follows: "Mr. Haas, is it not a fact that on the day after this accident you transferred all your real estate?" There was an objection to this question on the ground that it was "incompetent, irrelevant and immaterial and calls for a collateral matter." The court overruled the objection and the appellant answered "Yes, sir."

The basic principle underlying the admission of such testimony is that it tends to show consciousness on the part of the defendant, that he was legally liable for the damages incurred. If the appellant desired to show the transfer was an ordinary business transaction he had the opportunity to do so. The examination was opened by the plaintiff, over the objection of the appellant, and the appellant did not see fit to explain the transfer. As a matter of fact appellant argues in his brief that "it should at least have been shown that Mr. Haas made this transfer with full knowledge of the facts and the law applicable thereto. It may be that Mr. Haas had in his mind that the owner of any automobile would be liable for damages regardless of any other fact." If this were so he had that peculiarly within his own mind and could have so explained.

This theory of admission is the principle underlying the decision of this court in the case of State v. Anderson, 58 N. D. 721, 65 A.L.R. 1304, 227 N. W. 220, where cases are analyzed. This theory is sustained in Chaufty v. De Vries, 41 R. I. 1, 102 Atl. 612, 17 N. C. C. A. 982, where the owner of an automobile was sued for damages resulting from an accident which occurred while his son was driving—

the father being absent. Shortly afterwards the father transferred property. The court says, "the transfer of defendant's property so soon after the accident was a fact from which the jury could draw an inference, based upon the defendant's conduct, taken in connection with other evidence and circumstances in the case, unfavorable to the honesty and sincerity of the defense put forward by him at the time of the trial. . . ." Various cases are analyzed showing that such acts "would operate like an admission of liability and be equally competent. 'Admission may be by acts as well as by words.'"

In Harrod v. Bisson, 48 Ind. App. 549, 93 N. E. 1093, such evidence was allowed as being in the nature of an admission. There was no error in the ruling of the court.

On this appeal the main issue is the sufficiency of the evidence to justify the verdict.

The appellant is a retired farmer owning an automobile which he uses for his own pleasure and business. His family is grown and self-supporting. All the children involved have long since attained their majority. For several years the defendant Katherine has lived at home. Part of each day she worked for a brother in the conduct of a store. For the remaining portion of the day she worked at home in the daily housework. She received no compensation for her service at home and paid nothing for room rent or board. She admits that she was subject to her father's orders "to a certain extent," but very much as an older daughter would be who was living at home. She had a good deal of experience driving a car in crowded cities as well as on the highways of the State. A sister Josephine, a school teacher, was at the family home during her vacation. The family ties seemed to have been strong and full of affection, and during the period involved many of the children—there were twelve children in all—were at home visiting their parents and enjoying the society of their brothers and sisters. Apparently Josephine did not drive a car and, being desirous of going to Fargo to consult a physician, she asked her father if she could use the car, telling him that Katherine would drive. While the testimony of the father discloses an evident desire to show that the car was directly under his control and no one used it without consent given every time it was desired, yet it is quite clear the members of the family who had no car of their own, were welcome to this car.

Just what conversation, if any, took place between the appellant and his daughter, Katherine, regarding the instructions which came to her, is indefinite. It naturally would be so under the circumstances, as all parties interested took certain things for granted, such as they were welcome to the use of the car if they needed it, knowing there would not be specific requests, compliances or directions, Josephine asked Katherine to drive the car, and she said she would if her brother would let her go from the store. The brother readily complied and the two sisters with other members of the family started for Fargo via Wahpeton. On the return trip they left Wahpeton and while near Wyndmere the accident took place. It is clear the father granted the use of the car to Josephine and knew that Josephine was not going to drive the car, but that his daughter, Katherine, who was living with him at home, would be required to drive.

The fact that Katherine had reached her majority is not necessarily controlling. Paraphrasing Carpenter v. Dunnell, ante, 263, 237 N. W. 779, a daughter residing with her parents does not cease to be a member of the family merely by reason of the fact that she has reached her majority. The point is not whether the daughter is an adult or a minor, but whether she was using the car for a purpose for which the parents provided it, with authority, expressed or implied. Katherine was using the car with the full knowledge of the father, who had expressly granted its use to the girls for this trip to Fargo and the father knew that Katherine was to do the driving.

It is claimed the deceased was guilty of contributory negligence. The decedent had left Wahpeton shortly before the defendant Katherine Haas left Wahpeton with her sisters. Both cars were going in the same direction. When the collision occurred the decedent's car showed a flat tire. His car was on the north side of the road, facing west and about three feet from the ditch. Appellant's car was somewhat nearer the ditch, and six to eight feet east of decedent's car. A jack was lying beside decedent's car and evidently had been used in jacking up the car to fix the tire. None of the occupants of the appellant's car saw a red light on decedent's car; but their claim is that passing cars had raised such clouds of dust their vision was obscured. There is no direct proof there was a rear light on the car at the time of the accident. It had rear lamps in proper place, proper position, and

proper condition. Shortly before the accident, and while appellant's car was nearing the decedent's car, a third car approached from the west with glaring headlights. Katherine says this dazzled her vision. Shortly before meeting this car with the glaring headlights a fourth car coming from behind passed her going west and raised a cloud of dust. Shortly after being passed by this latest car she met the car with the glaring lights, which again raised dust. After this car passed her the collision took place. She says she had slowed down on account of the glaring headlights and clouds of dust; but the evidence shows conclusively that the fender of her car struck the left bumper of decedent's car. Apparently decedent was behind his car fixing it, and was struck while in that position. He lived but a short time but did not regain consciousness. The occupants of appellant's car were injured when the broken glass of their windshield struck them, and by the shock of collision. They were examined as to the rate of speed, the dust, the passing cars and such matters. There was ample room at the place where decedent's car was stopped for two other cars to pass abreast.

The only claim upholding the charge of contributory negligence on the part of the decedent is the theory that he should have stopped his car in another portion of the road and that he did not have a rear light, or, if he did, he was working with his body obstructing this light. The theory of the decedent's body obstructing the rear light is speculative purely, and there is nothing to indicate that one having tire trouble and who, while driving west, drives his car to the extreme right hand side of the road in order to repair the tire, is, because of this fact, guilty of contributory negligence. See Jondahl v. Campbell, ante, 555, 238 N. W. 697. The court submitted the question of contributory negligence to the jury with proper instructions and the verdict shows the jury found there was no contributory negligence.

The appellant claims that the accident occurred without negligence on the part of Katherine Haas, even though the deceased was not guilty of contributory negligence. The testimony discloses the position of the cars after the collision, the distance which the decedent's car was pushed, the damage to the appellant's car and to its occupants because of the impact, and the damage to the decedent's car from the same cause. Evidence was introduced showing the condition of her lamps because

of dust and grime and oil, and how far she could see ahead of her because of the condition of her lights. All these matters the jury were required to take into consideration in determining whether the defendant Katherine was driving at a proper rate of speed considering the cloud of dust which she said was raised, and the extent of the traffic on that highway at that time as testified to by the various witnesses.

If Katherine was blinded by the glare of the lights of the car coming from the west, a car which she saw for a long distance, and then was enveloped by a cloud of dust from the car that passed her going west, and re-enveloped with the cloud of dust from the car with the glaring lights it was her duty to exercise great caution until vision could be restored, for it is "negligence to drive a car so fast that you cannot stop it within the distance you can see." Axelson v. Jardine, 57 N. D. 524, 223 N. W. 32. The accident occurred about 9:15 on an August night. The glaring headlights, and the clouds of dust from passing cars are the principal reasons given for not seeing the decedent's car at the time of the collision. Katherine Haas was a co-defendant. Judgment was rendered against her, but she has not appealed. Whether this was because of the consciousness of liability, from a feeling that she was negligent, or whether it is because judgment may not be collectible, or for some other reason is not apparent. But there was sufficient evidence introduced to raise the question of her negligence and so far as she is concerned that matter is determined because of her failure to appeal, if for no other reason.

If the appellant be liable he is liable because he, the owner of a car, permitted his daughter Josephine to use it for a purpose for which it was intended, and expressly or impliedly permitted another daughter, a member of his family to drive the same. The court told the jury he was not liable unless Katherine was driving the car with the express or implied authority of the appellant, as his agent or servant for that purpose, and in serving some purpose for which the father kept the automobile.

Much testimony was elicited in regard to appellant's permission to use the car, and his purpose in keeping it, as heretofore indicated. All these matters were submitted to the jury with proper instructions,

which apparently were satisfactory to the appellant for no exceptions were taken to the charge, other than the one heretofore discussed.

We have examined the evidence carefully and are constrained to hold there is sufficient evidence to submit all of these issues to the jury, and therefore the verdict of the jury is binding upon the courts. This being so. the judgment of the lower court is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL and BURKE, JJ., concur.

BURR, J. (On motion for rehearing.) Appellant asks for rehearing on the ground that this court has overlooked defendant's requests for instructions Nos. 5 and 6. It is true that defendant made such request, but in his motion for a new trial he did not specify as error the refusal to give the instructions requested. The attention of the trial court therefore was not called to such matters and that court was not required to pass upon the effect of refusal. "Grounds not stated in the motion or written statement will not be considered at the hearing by the trial court." Kanable v. Great Northern R. Co. 45 N. D. 619, 622, 178 N. W. 999. See also Jensen v. Clausen, 34 N. D. 637, 159 N. W. 30; O'Dell v. Hiney, 49 N. D. 160, 190 N. W. 774; Ruble v. Jacobson, 51 N. D. 671, 200 N. W. 688.

In addition, on this appeal the appellant does not specify as error the refusal of the court to give such instructions. Appellant appeals on the insufficiency of the evidence and errors of law occurring at the trial. Section 7656 of the Compiled Laws requires the appellant to serve with his notice of motion for a new trial or with his notice of appeal "a concise statement of errors of law he complains of." Hence the refusal to grant such instructions must be set forth if appellant desires this court to consider them. Kanable v. Great Northern R. Co. 45 N. D. 619, 178 N. W. 999, supra. This statute has been in force for years and as far back as Henry v. Maher, 6 N. D. 413, 71 N. W. 127, this court held no errors in law will be considered by this court unless "they are specified in the statement of the case." In Bertelson v. Ehr, 17 N. D. 339, 116 N. W. 335, this court ruled that it was "essential to a review of errors of law occurring at the trial of a law action that they shall be specified in the statement of the case."

See also American Case & Register Co. v. Boyd, 22 N. D. 166, 133 N. W. 65. This has been the uniform ruling. The party moving for a new trial must present all the grounds which he claims entitled him thereto. "He cannot present one ground in the trial court, and another ground in the appellate court." O'Dell v. Hiney, 49 N. D. 160, 190 N. W. 774, supra. In this case he does not present such grounds in either court.

Again this court "will not consider, as a ground for reversal of the judgment of the trial court and its order denying a new trial, a point not raised in the trial court." (Poirier Mfg. Co. v. Kitts, 18 N. D. 556, 120 N. W. 558) for "the review in the Supreme Court is confined to matters or objections urged below." Brissman v. Thistlethwaite, 49 N. D: 417, 192 N. W. 85; Fargo Loan Agency v. Larson, 53 N. D. 621, 207 N. W. 1003.

The petition for rehearing is denied.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL and BURKE, JJ., concur.