[File No. 6079.]

FRANCIS JASZKOWIAK, Respondent, v. O. A. REFLING et al.

DRAKE CO-OPERATIVE CREAMERY COMPANY, a Corporation, Appellant.

(245 N. W. 817.)

Opinion filed October 4, 1932.

*Geo. A. McGee* and *Harry E. Dickinson* and *Thomas D. Morrow,* for appellant.

*F. E. McCurdy,* for respondent.

BURR, J. The complaint states that the parties hereto made a contract whereby the plaintiff was to dig, complete and equip a 4¼ inch "tubular well for the defendant at the agreed price of $4 per foot and $150 for one 16 inch Stroke pump jack;" that the plaintiff furnished the well as agreed; that the total cost was $1,310 of which only $655 has been paid and so he demands judgment for the remainder.

Defendant admits a contract whereby the plaintiff was to drill a well for the defendant but says that it was part of the contract "that the said well would furnish not less than eighteen (18) gallons per minute of good clear water, free from sand and dirt;" that the plaintiff knew that water was required for the washing of butter and the "manufacture of similar dairy products;" that the plaintiff did not furnish a well of water "free from dirt and other material," or one that furnished eighteen gallons of water per minute; but that the well pumped up one-half sand; and the water furnished was "unfit for the washing of butter or use in manufacturing of dairy products;" and that plaintiff has been fully paid for any services he performed, and overpaid.

The action against defendant Refling was dismissed. The jury returned a verdict in favor of the plaintiff and judgment was entered thereon. Defendant moved for judgment notwithstanding the verdict or for a new trial, which motion was denied, and the defendant appeals from the judgment and from the order.

There are twelve specifications of error—seven of which deal with rulings in the introduction of evidence, two with specific objections to portions of the charge, and three with the alleged failure of the court to fully and fairly instruct the jury on material issues. The defendant claims also the evidence is insufficient to sustain the verdict, setting forth four particulars.

The plaintiff urges the appeal cannot be entertained for the reason the defendant made no motion for a directed verdict and therefore cannot be heard on this motion for judgment notwithstanding the verdict and "that an appeal from the order denying this motion" must be dismissed. Plaintiff cites Gross v. Miller, 51 N. D. 755, 200 N. W. 1012, where it is held that "a motion for a directed verdict is a necessary preliminary to a motion for judgment notwithstanding the verdict." This does not apply to the motion for a new trial, and, though the de-

fendant was not in position to move for judgment notwithstanding the verdict because it had failed to move for a directed verdict, nevertheless it had a right to move for a new trial. Thus we examine the evidence to determine whether the state of the evidence is such as to necessitate a new trial.

Both sides agree there was a contract to furnish a well for the Creamery Company, but they differ as to the terms of this contract.

There is no dispute as to the terms of payment, the depth of the well, or its size. There was some dispute as to the equipment furnished; but defendant has withdrawn the objection thereto. There is no dispute as to the amount due, if plaintiff has proved his contract. The real issue is whether the feature regarding the quality and quantity of the water furnished was a part of the contract. The defendant admits the contract but alleges the water was to be of a certain quality and quantity. The plaintiff denies it explicitly. He says there was no agreement that the well should pump eighteen gallons per minute, or that the water should be free from sand; although he says he did know the water was to be used for creamery purposes, that the capacity of the pump used was eighteen gallons and of $2\frac{3}{4}$ inch size, and that he and Mr. Refling, who made the contract for the defendant, tested the well "to the full capacity of the machine and it was eighteen gallons per minute."

The defendant affirms this condition of the water was a part of the contract; that when the well was tested sand came even if the volume was cut to ten gallons per minute.

This dispute as to the terms of the contract was peculiarly a matter of fact to be determined by the jury. The dispute was on a vital point necessarily involved in this contract, and there is ample evidence to sustain the findings of the jury. The jury found for the plaintiff and found therefore that his version of the contract was true. The verdict of the jury is final when there is substantial conflict on material issues involved and adequate justification for the verdict returned.

Six of the alleged errors in the introduction of testimony deal with rulings on questions which counsel addressed to witnesses showing the flow of the water as shown by the pump and its quality with regard to sand. There was objection to this question—"Was that an unusual amount of sand for a well that has been pumped that length of time?

. . ." on the ground that it called for a conclusion of the witness. The witness was the son of the plaintiff, and a well driller experienced as to the conditions in that community. We find no merit in these objections.

The seventh one deals with a question addressed to Prof. Simpson of the University, called as a witness for the plaintiff on rebuttal. The witness was testifying as to the quantity of sand found in wells of this depth and in this well. His qualifications to testify are undisputed. He was asked "Was the sand which you found there and which you examined, was that such a sand as in water parlance would constitute an impurity?" The objection was that it was "incompetent, irrevelant, and immaterial; calling for a conclusion; not a proper hypothetical question." He answered "I would say no it was not an impurity in a sense that it rendered the water impure practically. All drilled sand stone wells, and I have examined hundreds of them, would contain a few grains or traces of sand in the tank." The plaintiff denied he agreed to furnish a well free from sand and that he agreed to furnish water of any special quality. The amount of sand found in the water was important as bearing upon the contention of the plaintiff. The question was addressed to the water expert to show that it was practically impossible to get a well that would not have some traces of sand. It was the claim of the plaintiff that all he was required to do was to furnish a well that would be considered a well under normal conditions, and that this testimony was pertinent to show that this well was a normal one. There was no error in the ruling.

The court instructed the jury that the "undisputed evidence in this case shows that any contract that was made, was an oral or verbal contract and it further discloses that any contract made between the plaintiff and defendant in this case was made between the plaintiff himself and the defendant Refling."

The appellant says this tended to mislead the jury into the belief that they did not have to consider testimony of some employee of the plaintiff made at the meeting of the board of directors as evidence of what the contract was. There was no error in the instructions. It was undisputed whatever contract was made was made between the plaintiff and Mr. Refling. The contract depended upon what these persons said. The employee referred to was a son of the plaintiff and he testi-

fied in some respects to what others said to him and what kind of a well he was to drill; but this does not alter the fact that the contract was made between the plaintiff for himself and Mr. Refling acting for the defendant.

The court charged the jury as follows:

"Now the defendant in this case claims that the contract was not as claimed by the plaintiff, but that the contract made between the plaintiff and defendant was that he would furnish them a good well of a capacity of 18 gallons per minute of pure water, and if you find that was the contract and that the plaintiff has failed to comply with that contract, then and in such case, it would be your duty to find a verdict for the defendant for the dismissal of the action."

It is said this instruction injected into the case the question of the "purity of the water" whereas it should have shown that the water to be furnished "was to be clean water, free from sand or dirt, suitable for use in a creamery." The objection is hypercritical, especially in view of the fact that the court in its charge had set forth the contention of the defendant to the effect that the defendant was to furnish a well that "would furnish not less than eighteen gallons per minute of good, clear water, free from sand and dirt, as the plaintiff well knew that the said creamery company required a large amount of good, clean, pure water, free from sand and dirt for the washing of butter and the manufacture of similar dairy products. . . ." The court had already stated the defense and when thereafter he referred to "pure water" the jury must have understood it meant water of the quality hereinbefore described as the court was again stating what the defend-ant claimed.

It is urged the charge does not set forth clearly the conditions claimed and does not point out clearly the duty of the jury to determine what the contract between the parties was.

The court told the jurors that they were required to consider "not only the testimony of the plaintiff and the defendant Refling but all the other credible evidence in the case."

It is said the instructions failed to inform the jury that if it found the contract was as claimed by the defendant then plaintiff could not recover if the water furnished was not free from sand or dirt; and permitted the jury to find for the plaintiff even if the water contained

"only a slight or normal amount of sand or dirt;" further, that the instructions ignored the claim of the defendant, that the plaintiff was to furnish water suitable for creamery use. An examination of the charge shows that the claim of the defendant was stated fully and completely, that the jury was required to "give to the testimony of each witness such weight as you believe it is fairly and justly entitled to," and that if it found the contract was as claimed by the defendant, "and that the plaintiff has failed to comply with that contract, then and in such case, it would be your duty to find a verdict for the defendant for the dismissal of the action."

There were no requests for instruction and the court instructed generally on all of the issues. If the defendant believed that such instructions were not sufficiently specific it was its duty to request further instruction. Carr v. Minneapolis, St. P. & S. Ste. M. R. Co. 16 N. D. 217, 112 N. W. 972; Landis v. Fyles, 18 N. D. 587, 120 N. W. 566; North Star Lumber Co. v. Rosenquist, 29 N. D. 566, 151 N. W. 289. Where a party has not requested further instructions he cannot complain of failure of charge on any particular point "unless the charge is so devoid of the correct principles of law applicable to the issues that it amounts to a misdirection." Andrieux v. Kaeding, 47 N. D. 17, 28, 181 N. W. 59.

Finding no reversible error the judgment is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL and BURKE, JJ., concur.