[File No. 6896]

THE STATE OF NORTH DAKOTA, Respondent, v.
ALBERT HUMMEL, Appellant.

(14 NW(2d) 368)

Opinion filed May 2d, 1944

*J. K. Murray* and *H. P. Jacobsen,* for appellant.

*Alvin C. Strutz,* Attorney General, and *Clifford Jansonius,* Assistant Attorney General, for respondent.

NUESSLE, J. This proceeding was brought to determine the paternity of a child born out of wedlock to the complaining witness. The defendant charged with being the father of the child denied that he was. The case was tried to the jury, which returned a verdict finding him to be the father. Judgment was entered on this verdict. The defendant moved for a new trial on the grounds of abuse of discretion on the part of the court whereby the defendant was prevented from having a fair trial, accident and surprise which ordinary prudence could not have guarded against, and insufficiency of the evidence to sustain the verdict returned. The motion was denied. Whereupon the defendant perfected the instant appeal from the judgment and from the order denying his motion.

The defendant grounds his appeal on the alleged error of the court in denying his motion for a new trial, on the insufficiency of the evidence to sustain the verdict, and on account of alleged erroneous instructions to the jury.

The record discloses that the regular February 1943 term of court for Hettinger County was set to convene at Mott, the county seat, on the second day of February, Judge Lembke presiding. An affidavit of prejudice was filed by the defendant against Judge Lembke. On February 1st, the Supreme Court designated Judge Miller to try the case in his stead. Judge Lembke called the court to order on February 2nd at ten o'clock in the morning. The jury had been called to report on February 3rd. When the calendar was called it was found that the instant case was the only jury case for trial. Judge Miller was not then present but he advised he would be at Mott on February 3rd, prepared to try the case.

Mr. J. K. Murray of Bismarck was the attorney for the defendant. He was ill at his home in Bismarck. He had requested Mr. H. P. Jacobsen of Mott to attend on the call of calendar and to advise him of the disposition of the case. Mr. Jacobsen telephoned Mr. Murray and told him that the case had been set for trial on February 3rd. Whereupon Mr. Murray asked him to look after the case for the defendant in case it was agreeable to the latter that he do so. Mr. Jacobsen

thereupon told the defendant what Mr. Murray had said and the defendant arranged with him to look after the case. Mr. Jacobsen at once directed the defendant to procure his witnesses and to bring them to his office at nine o'clock on the morning of February 3rd so that he might inquire of them concerning the facts to which they would testify. This was in the afternoon of February 2nd. The defendant immediately set out to get his witnesses, who resided some twenty-eight miles from Mott. He first went to the home of his father, some miles from Mott, to get his automobile and then proceeded to the farm of one Sackmann, where two of his witnesses lived. The roads were heavy on account of snow so it was necessary for him to travel some fifty miles in order to do this. When he reached the Sackmann place it was then six o'clock in the evening so he thought best to remain there that night. The weather was fair and he had no warning that a storm was impending. He arose early the next morning and left at six o'clock with his witnesses for Mott. In the meantime snow had begun to fall, the wind had risen and the snow was drifting. His automobile stalled in the snow. Thus he was delayed. The machine then broke down. He borrowed another. The storm increased in fury and it was impossible to travel further by automobile. He secured a team of horses and endeavored to drive to a neighbor who had a telephone, so he could inform his attorney of his difficulty. He was unable to do this on account of the bad condition of the roads. Had there been no storm and had he not been stalled and his automobile disabled, he would have been able to reach Mott with his witnesses as he had been directed to do by Mr. Jacobsen. As it was he could not do so.

In the meantime, at ten o'clock on the morning of February 3rd the court convened, Judge Miller presiding. This case was called for trial. Mr. Jacobsen appeared for the defendant. He stated to the court that the defendant and his witnesses were not present and told Judge Miller what he had directed the defendant to do. He stated further he expected the defendant to appear at any moment with his witnesses and in order not to inconvenience and delay the court he was willing to proceed to select a jury. This was done. Then the remainder of the jurymen were excused. The defendant had not yet appeared. Mr. Jacobsen again stated the facts to the court and that he believed the defend-

ant and his witnesses would come presently and accordingly was willing to proceed. The State offered its testimony and rested its case at about two o'clock in the afternoon. The defendant however did not appear. During the noon intermission Mr. Jacobsen telephoned to the defendant's home inquiring as to where the defendant was. He was told that the defendant had left his home the preceding afternoon and had gone to Sackmann's place to get his witnesses. When court reconvened Mr. Jacobsen again stated the facts to the court and asked for a continuance until the next morning. The court granted a continuance of one hour and the defendant not then having appeared refused to grant further time and over the protest of defendant's attorney submitted the case to the jury.

We have stated the facts as they appear from the showing made on the record and by affidavits filed in support of the defendant's motion for a new trial. The defendant also alleged in his affidavit that he and his witnesses would controvert the testimony offered by the witnesses for the State. His affidavit and the affidavits of his witnesses set forth in detail the purport of the testimony they would have given. This was such, if the jury had believed it, as would have required them to return a verdict in his favor.

On the other hand, the State, opposing the motion for a new trial, made a showing that the defendant had notice as to when the term would convene and that the case would be called for trial; that while the roads were heavy and there was a storm on February 3rd yet, if the defendant had used reasonable diligence he would have had his witnesses in attendance at the time the case was called and would himself have been there; that he knew the roads were heavy and it might be difficult if not impossible to travel by automobile in case a storm came up; that some thirty-five jurymen were present on the morning of February 3rd and many had come long distances by automobile and other modes of travel; that witnesses called in other cases were present who had had to contend with the same difficulties the defendant had met with; and that, under all the circumstances, there was no reasonable excuse for the defendant's failure to be on hand at the time the case was called for trial and to have his witnesses in attendance. The court denied the motion, saying:

" . . . it appears that defendant on February 2nd knew that his case would be called for trial on February 3rd at 10 A. M., and that he could have been present by either remaining in Mott or returning with his witnesses on the evening of February 2nd. Instead, he gambled on the elements and his car. Then too, it cannot be said that his effort was real when other parties, witnesses and jurors were able to reach Mott on the same morning of the 3rd, some after traveling much greater distances and from his own community.

"The case was started in defendant's absence. During the afternoon plaintiff rested. The Court waited an hour for defendant, but he failed to appear or report by wire. It was submitted to the jury and a verdict for plaintiff returned.

"The State provided all the facilities and machinery to give the parties a trial by jury, even to calling in a second judge at the defendant's request, who traveled 63 miles to attend. It is not asking too much of the defendant to be present at the designated time, even though it may require him to come in the evening before the day of trial."

Of course, as to whether a new trial shall be granted is a question which is within the sound discretion of the trial court, and the court's action in this regard will not be disturbed unless there is an abuse of that discretion. Braithwaite v. Aiken, 2 ND 57, 49 NW 419; Martin v. Parkins, 55 ND 339, 213 NW 574; Baird v. Unterseher, 57 ND 885, 224 NW 306; Blum v. Standard Oil Co. 68 ND 329, 279 NW 764, and cases cited.

In the instant case there is no question on the showing made but that the defendant made an effort to procure his witnesses and be in attendance at the time the case was called for trial. Due to the fact an affidavit of prejudice had been filed against Judge Lembke and Judge Miller had been designated to sit in his stead, it was not definitely known when the case would be set for trial until the calendar was called on February 2d and Judge Miller had advised he would be at Mott on the morning of the 3rd. The defendant, after he had seen Mr. Jacobsen on the afternoon of the 2nd and had learned when his case would be on for trial, hastened to get his witnesses. Of course he knew the roads were heavy and he should also have known that a storm might arise and that if it did there was a possibility he would not be able to

get through by automobile, the only feasible means of travel. Thus, to a certain extent, he did speculate on his ability to do what he proposed to do. But he could not do otherwise. There is no question but that he did everything reasonably possible from that time on to procure his witnesses and be in attendance with them. It is true that the jurymen who were called for that term of court were able to reach Mott, but it appears a considerable number of them had set out the day before in order to do so, and it does not appear that the roads over which they traveled were in the same condition as those over which it was necessary for the defendant to travel. There is no question but that there was a severe storm on February 3rd. It is undisputed that men who were in the business of trucking grain were unable to operate on that day on account of the storm, and it likewise appears that the jurymen who were discharged after the jury in the instant case was selected, were anxious to get away on account of weather conditions. All in all it seems to us that had the facts as developed on the motion for a new trial been shown at the time of the trial the continuance as requested by defendant's counsel until the morning of February 4th should have been granted. If there was any neglect on the part of the defendant it was excusable considering all the circumstances. The continuance asked was not unreasonable. It entailed no particular delay or inconvenience on the part of anyone and no great expense to the county. Doubtless it would have been granted had the court been fully advised in the matter. If the defendant and his witnesses had testified as they set forth in their affidavits that they would have done, and the jury had believed this testimony, the verdict could not have been otherwise than for the defendant. Under the circumstances as shown there was an abuse of discretion on the part of the trial court in denying the motion for a new trial and, on that account, the judgment must be reversed and a new trial granted. In view of the foregoing holding it is not necessary to consider the other assignments of error.

Judgment reversed and new trial ordered.

MORRIS, Ch. J., and BURKE, CHRISTIANSON, and BURR, JJ., concur.