R. Wendell MOUSEL, Plaintiff-Appellant,

v.

Herman WIDICKER, Defendant-Respondent.

No. 7458.

Supreme Court of North Dakota.

April 18, 1955.

Strutz, Jansonius & Fleck, Bismarck, and John A. Layne, Fessenden, for appellant.

John J. Tebelius, Harvey, for respondent.

GRIMSON, Judge.

The plaintiff brings this action on a check issued by the defendant to the plaintiff on April 1, 1952; but post-dated January 1, 1953, in the amount of $2,000. The defendant stopped payment of that check. The complaint alleges presentment for payment, dishonor and notice. Defendant answers with a general denial, admits the check, raises the defense of failure of consideration and counterclaims for $8,000 damages, alleging that the check was given as part payment for a bull sold by plaintiff to defendant for breeding purposes under a warranty of fitness for that purpose, and that the bull was not as represented and warranted and was unserviceable and incapable. Plaintiff replied to the counterclaim with a general denial. The action was tried to a jury which brought in a verdict for the plaintiff. Thereafter the defendant duly made a motion for judgment notwithstanding the verdict or in the alternative for a new trial. The motion for judgment notwithstanding the verdict was denied as no motion for a directed verdict at the close of the evidence had been made. The motion for a new trial was granted on account of misleading instructions on implied warranty. This appeal is from the order granting a new trial and the judgment entered thereon.

The district court may grant a motion for a new trial for errors at law occurring and excepted to at the trial. Section 28–1902, sub-section 7 NDRC 1943. All instructions to the jury are deemed excepted to unless written instructions have been submitted to counsel beforehand when written exceptions must be taken. Section 28–1414 NDRC 1943. The instructions were not submitted to counsel beforehand in the case at bar.

The evidence shows that the plaintiff has been in the business of raising purebred, Hereford cattle and selling them for breeding purposes at Cambridge, Nebraska, since 1925. The defendant farms in Wells County, North Dakota, and for the last ten years has raised and sold purebred, Hereford cattle. In May 1951, plaintiff, at his ranch in Nebraska, sold a bull to defendant, receiving payment in full by cash and an animal traded in. This bull was moved to defendant's farm and in time proved to be unsatisfactory for breeding purposes. Plaintiff furnished defendant a relief bull for a period of six or seven weeks in 1951. Thereafter, and on April 1, 1952, as a result of communications, defendant returned the bull he had purchased to plaintiff and purchased another grown bull for $8,000, receiving credit of $5,000 for the bull returned, paying $1,000 and giving the post-dated check sued upon for $2,000. Defendant testifies that this last bull was also warranted but failed as a sire, producing only three calves out of twenty cows.

The plaintiff and appellant in his brief states that the issues "in the case were as to the serviceability of the bull for breeding, and warranties, either express or implied, in connection with the serviceability."

The appellant claims that the district court erred in granting a new trial. He specifies as error on this appeal:

"The instructions of the court were neither defective nor insufficient in instructing the jury how and under what conditions the jury might find a verdict in favor of defendant under the evidence tending to prove an implied warranty in the sale of the animal in question."

The first claim of the plaintiff and appellant is that if there were any errors in the

instruction on implied warranty the defendant is now barred from asserting such errors because he failed to make any request of the district court for a more complete instruction on implied warranty.

■ This court has repeatedly held that where a party fails to request more complete instructions on any matter in issue he cannot afterwards raise the question that the insufficiency of the instruction given amounted to non-direction.

In Burkstrand v. Rasmussen, 77 N.D. 716, 718, 45 N.W.2d 485, 487, it is said that:

"It is a well established rule of law that where a party has made no request for any further or additional instructions, such party cannot upon appeal assign error for nondirection unless it amounts to misdirection." See also Andrieux v. Kaeding, 47 N.D. 17, 28, 181 N.W. 59; Reineke v. Commonwealth Insurance Co., 52 N.D. 324, 334, 202 N.W. 657; Harmon v. Haas, 61 N. D. 772, 778, 241 N.W. 70, 80 A.L.R. 1131; Jaszkowiak v. Refling, 62 N.D. 601, 606, 245 N.W. 817; Grant v. Jacobs, 76 N.D. 1, 11, 32 N.W.2d 881; Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11.

In the instant case no request was made by the defendant for more complete instructions on implied warranty. Under the rule stated in the above cases he is barred from raising any objections to the insufficiency of the charge on implied warranty. However, he is not barred on his motion for a new trial from claiming as error that the instructions the court gave on implied warranty amounted to misdirection. That he has a right to do even though he failed to ask for more complete instructions and is barred from objecting on the grounds of non-direction not amounting to misdirection.

Then the plaintiff and appellant argues "that no implied warranty was involved in the sale in question, and, therefore the instructions given on this point were prejudicial only to the plaintiff." He claims that a general rule with respect to sale of animals for breeding purposes is that no implied warranty as to fertility is given. As authority for that claim he cites Frederickson v. Hackney, 159 Minn. 234, 198 N.W. 806, 807. In that case, however, the sale involved a bull calf only a few days old and the court found there was no evidence on which to base an express warranty. Then the court says:

"Implied warranties ordinarily speak concerning the present and give assurance only as to qualities existing at the time being. They do not ordinarily speak of the future, nor of qualities later to be developed."

For that reason the court held that in that particular case no implied warranty existed. In McQuaid v. Ross, 85 Wis. 492, 55 N.W. 705, 22 L.R.A. 187, also cited by plaintiff the court found no evidence to warrant the finding of any express or implied warranty and therefore the rule of caveat emptor applied. The plaintiff further cites the case of White v. Stelloh, 74 Wis. 435, 43 N.W. 99, as authority for that rule but that case involved a three months old Holstein bull calf and the court held that "it cannot be held as a matter of law that his sterility, which transpired two years later, existed at the time of sale, and that there was an implied warranty that he would possess the power of procreation at maturity." These cases are not in point under the facts in the case at bar. The bull here involved was a mature bull and was intended for immediate service.

■ The plaintiff-appellant also claims that the situation arising at the sale of an animal for breeding purposes is similar to that of a sale of an article with latent defect and does not apply in the sale of an animal in apparent good health when the buyer has an opportunity to inspect and the seller is not aware of the defect and the buyer is not relying on the seller's skill and judgment. The facts in all the cases cited, however, differentiate those cases from the case at bar. That rule does not apply under the facts in this case.

Implied warranty is clearly raised in the evidence. Plaintiff testified that he was and had been all his life engaged in the business of raising registered, Hereford cattle and was now engaged in selling pure bred bulls. He admitted that he knew defendant was purchasing a bull intending to use him for breeding purposes and that he sold him a bull for that purpose, giving assurance that the bull was fit for the purpose for which it was purchased. Defendant testified with more force on the same subject and that on the strength of what plaintiff said he bought the bull.

Section 51-0116, Sub. Section 1, NDRC 1943, provides that:

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he is the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for that purpose".

In accordance with this section the evidence in the case at bar clearly warranted an instruction on implied warranty.

In 77 C.J.S., Sales, § 330, page 1189, the principle of implied warranty in sale of animals for breeding purposes is laid down as follows:

"Where any seller sells an animal for breeding purposes, knowing that the purchaser is buying an animal for that purpose, there is an implied warranty of its reasonable fitness therefor, and against sterility, and that is not affected with a disease which destroys its value for such purposes".

In Dale v. Pierson-Brewen Commission Co., 160 Mo.App. 314, 142 S.W. 745, the court holds:

"The rule that property purchased for a special purpose is impliedly warranted to be fit therefor applies to live stock, and such an implied warranty is breached where ewes sold for breeding purposes were afflicted with a mouth and foot disease dangerous and contagious."

In the case of Petersen v. Dreher, 196 Iowa 178, 194 N.W. 53, 54, the plaintiff bought a brood sow from the defendant. The court says: "The record leaves no doubt that the sow was purchased as a brood sow, and that the seller knew, as well as the buyer, that the sow was purchased for breeding purposes. Plaintiff introduced evidence to show that the sow was sterile. * * * The general rule announced by the courts is that in sales such as in the instant case, there is an implied warranty, available as a basis of an action, that the thing purchased is reasonably suitable for the purpose for which it is to be used, unless excluded by the terms of an express warranty. (Citing many cases.)"

After abstracting the claims of the parties from the pleadings, the court charged on the issue of warranties as follows:

"The question of whether such agreement was entered into is for the jury to decide. In this connection you are instructed that any positive statement or affirmation of fact, and not of opinion, as to the quality and condition of the bull sold by the plaintiff to the defendant, which was made by the seller to the defendant, in the course of negotiations for the purchase of said animal, and which statements naturally and fairly imported that he intended to bind himself to their truth, and which were so understood and relied upon by the buyer, the defendant herein, would constitute a warranty. The foregoing is an express warranty."

"Our law further provides that there may be under certain circumstances, an implied warranty. That rule is as follows: 'Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he is the grower or manufacturer, or not, there is an implied warranty that the goods shall be reasonably fit for that purpose.'

"Our law further provides: 'An express warranty or condition does not negative a warranty or condition implied under this chapter unless inconsistent therewith.' In other words there may be both an express and an implied warranty in a sale."

Then after saying that there is no dispute as to the $2,000 check being given by the defendant to the plaintiff as a part of the purchase price of the bull in question, the court says:

"Therefore, the plaintiff is entitled to recover a verdict at your hands unless you find that the allegations of defendant's Counterclaim to the effect that there was a warranty of said bull, are true and that the bull did not comply with the warranty, either express or implied, and further find that the bull was worthless for breeding purposes.

Immediately following that the court elaborates on the express contract. The court says:

"If you find that the defendant purchased a bull from the plaintiff, and the plaintiff sold the bull to defendant, in the first instance, then that would constitute a contract, along with all of the agreements which were a part of the same. It is essential to the existence of a contract that there should be a consent of the parties, which consent must be:

"1. Free;

"2. Mutual; and

"3. Communicated by each to the other.

"Consent is not mutual unless the parties all agree upon the same thing in the same sense. There must be a 'meeting of the minds.' It is not for the jury to make contracts for the parties. It is the duty of the jury in this case to determine from all of the evidence in the case whether a contract was made between the plaintiff and defendant, and what that contract was, and whether either party has breached the contract."

This instruction might well mislead the jury to think that these were the requirements necessary to find any contract between the parties. It does not include implied warranty. In Deere & Webber Company v. Moch, 71 N.D. 649, 655, 3 N.W.2d 471, 474, 139 A.L.R. 1270, it is said: "An implied warranty is not essentially a part of the agreement made by the parties themselves. It is imposed by operation of law and becomes a part of the contract by virtue of the statute." In Bekkevold v. Potts, 173 Minn. 87, 216 N.W. 790, 791, 59 A.L.R. 1164, it is said:

"An implied warranty is not one of the contractual elements of an agreement. It is not one of the essential elements to be stated in the contract, nor does its application or effective existence rest or depend upon the affirmative intention of the parties. It is a child of the law. It, because of the acts of the parties, is imposed by the law. It arises independently and outside of the contract. The law annexes it to the contract. It writes it, by implication, into the contract which the parties have made. Its origin and use are to promote high standards in business and to discourage sharp dealings. It rests upon the principle, that 'honesty is the best policy,' and it contemplates business transactions in which both parties may profit."

Then the court goes on to instruct on damages if a breach of the contract is found.

The court places the burden of proof on the defendant to prove "that there was a warranty as to the quality of the bull sold to him by the plaintiff, and that such warranty of quality was to the effect that the bull was a good calf getter and was reasonably satisfactory for breeding purposes." The court tells the jury that if the defendant has sustained his burden of proof "that the plaintiff did at the time of making said

sale warrant to the defendant that the said bull was an efficient bull for the purpose of breeding cows * * * that said bull was not as represented * * *. In that case the jury should return its verdict in favor of the defendant in the amount of his loss and detriment. * * *"

"If the jury finds from all of the evidence in this case, under these instructions, that the defendant has sustained the burden of proof resting upon him to prove the allegations and claims set up in his Answer and Counterclaim, and that the plaintiff did at the time of making said sale warrant to the defendant that the said bull was an efficient bull for the purpose of breeding cows and would effectually cause cows to be pregnant and to bear calves, and further find from the whole evidence in the case that the said bull was not as represented and was not an efficient bull for breeding purposes and did not produce calves in a normal and reasonable amount or percentage of cows so bred, then and in that case the Jury should return its verdict in favor of the defendant. * * *"

It will be noticed that all the instructions as to the effect of the facts upon the kind of contract involved referred to express contract. All that the court instructed the jury as to an implied contract is the statutory definition thereof. There is no statement in the instructions upon what facts the jury could find implied warranty. There is no instruction to the effect that if the defendant made known to the plaintiff the particular purpose for which the bull was required and if it appeared that the defendant relied on the plaintiff's skill and judgment that would constitute implied warranty that the animal was reasonably fit for that purpose the issues of both express and implied warranty should have been clearly set out for the jury in the instructions. Instead the court dealt at length with the subject of express warranty and merely quoted the technical words of the statute as to im-

plied warranty. As the court says in its memorandum "A careful reading of the instruction * * * rather impressively tells the jury that any warranty requiring their consideration must be found in the contract of the parties." There is no attempt to apply the law to the facts as respects implied warranty. The jury could easily have been misled by the instructions to think that an express warranty was necessary before they could find for the defendant. Yet there actually was evidence from which, if the jury believed the testimony thereon, they could find an implied warranty.

On the applicability of the instructions the rule is laid down in 53 Am.Jur., Trial, Section 573, p. 451, that:

"The general principle is that instructions given by the trial court, * * * should state the law as applicable to the particular facts in issue in the case at bar, which the evidence in the case tends to prove; mere abstract propositions of law applicable to any case, or mere statements of law in general terms, even though correct, should not be given unless they are made applicable to the issue in the case at bar."

In the instant case the court gave the statutory definition of implied warranty without making it applicable to the issues in the case.

In Smith v. Kappas, 219 N.C. 850, 15 S.E.2d 375, 378, the court says:

"To declare and explain the law arising upon the evidence in a case means to declare and explain it as it relates to the various aspects of the testimony offered. While no general formula is or should be prescribed, something substantially more than a general definition or an abstract discussion is required. The judge should at least give a résumé of the facts upon which plaintiff relies, and as to which

790

she has offered evidence, and instruct them as to the law arising thereon. He should do likewise as to the evidence offered by the defendant. That is, it is the duty of the judge to instruct the jury as to the circumstances under which the issue should be answered in the affirmative and under which it should be answered in the negative."

 Instructions should be clear, accurate and concise. They should fully cover the claim made by both sides of the case. Instructions of the trial court must be viewed in the light of the evidence on which they operate. If it appears that an instruction tended to mislead and confuse the jury and have adverse effect on the substantial rights of the complaining party it is prejudicial and ground for granting a new trial. Delaloye v. Kaisershot, 72 N.D. 637, 10 N.W.2d 593; Rott v. Provident Life Ins., Co., 69 N.D. 335, 340, 286 N.W. 393; Welter v. Leistikow, 9 N.D. 283, 83 N.W. 9; 3 Am.Jur., Appeal and Error, 643.

 The motion for a new trial is addressed to the sound discretion of the trial court and the presumption is that the order thereon was properly granted. The burden is upon the appellant to show that the grounds urged for a new trial are not sufficient. The order granting a new trial will not be reversed unless the trial court abused its discretion. State v. Hummel, 73 N.D. 308, 14 N.W.2d 368. The memorandum decision of the trial court shows careful consideration of the instructions and the court concludes that the instructions were "incomplete, misleading and amount to misdirection." We have come to the conclusion that the trial court did not abuse its discretion in granting a new trial.

The judgment entered thereon is affirmed.

BURKE, C. J., and MORRIS, SATHRE and JOHNSON, JJ., concur.