George FISHER, Plaintiff and Respondent,

v.

Edwin SUKO, Executor of the Last Will of Reinhold Suko, Deceased, Defendant and Appellant.

No. 7961.

Supreme Court of North Dakota.

Oct. 18, 1961.

362

Duffy & Haugland, Devils Lake, for defendant-appellant.

Hjellum, Weiss, Nerison & Ottmar, Jamestown, for plaintiff-respondent.

MORRIS, Judge.

This is an appeal by the defendant from a judgment rendered pursuant to a verdict of a jury and from an order denying a motion for new trial. The plaintiff, George Fisher, was injured while riding as a passenger in an automobile owned and driven by Ben Knoepfle which collided with one being driven by Reinhold Suko whose executor is the defendant. The collision resulted in injuries to Fisher and Knoepfle and in the death of Suko. The accident occurred December 12, 1957, at approximately three o'clock p. m. on a clear day, on U. S. Highway No. 10 near the eastern outskirts of the City of Medina. The highway runs through the city in an east-west direction. As the highway leaves the city toward the east it curves to the south, runs straight in a southeasterly direction for a short distance, and then curves toward the east until it runs east and west again. According to Knoepfle's testimony, he and Fisher left Medina in Knoepfle's 1951 Ford bound for Jamestown. They drove east on Highway No. 10, rounded the first curve toward the south, and were approaching the second curve, which turned toward the east, when Knoepfle first saw the Suko car approaching Medina on Highway No. 10 from the east. It was about 300 feet away. When it was about 200 feet distant, he saw that the Suko car was in the center of the road astride the yellow line. When the cars were about 100 feet apart, Knoepfle saw there was going to be an accident, started to turn toward the west, and stepped on the brake. He said he was driving in about the middle of his lane of traffic at a speed of 30 to 35 miles per hour. He estimated the speed of the Suko car as it came around the curve at 55 to 60 miles an hour.

The highway consisted of blacktop surfacing 28 feet wide. Knoepfle stated that when he first saw the Suko car it was pretty close to where the curve turns but hadn't come into the curve.

The highway patrolman who arrived at the scene shortly after the accident took measurements as to the positions of the cars and described the situation that he found. The Suko car was sitting in the north, or westbound, traffic lane. The right rear

wheel was five feet ten inches south of the north edge of the blacktop. The right front wheel was five feet two inches south of the north edge. The Knoepfle car was sitting in the opposite traffic lane, across it, and at approximately right angles to the Suko car. The Suko car was pointed north and the Knoepfle car had its front end toward the east. The distance from the right front of the Knoepfle car to the left front wheel of the Suko car was three feet six inches. There was no yellow dividing line on the highway where the cars were sitting but a broken yellow line extended down the highway in both directions. There were, in fact, two yellow lines extending southeast of the cars. One was eleven feet nine inches, and the other eleven feet, south of the north edge of the blacktop. Each car was sitting on its side of a projection of the yellow line. There were marks on the highway and debris, glass and mud lying on the road. The debris was southeast of the Knoepfle car and southwest of the Suko car. The patrolman described the marks by stating that one was a deep mark about four inches wide and about ten to twelve inches long, and the other marks were scratches that started southeast of the Suko car and extended up to and under the left front frame. The deep mark was fifteen feet five inches south of the north edge of the blacktop and twelve feet five inches north of the south edge. The damage to the Suko automobile was on the left front and involved about the left three-quarters of the car. The left front wheel was pushed back and up and the left front part of the car was resting on the highway. The major portion of the damage to the Knoepfle car was on the left front fender and grill. The hood had been pushed back and up. Several photographs of the cars, showing their position on the highway and the damage, were admitted in evidence.

An east-west gravel road intersects and connects with Highway No. 10 at the south end of the curve on which the accident happened. It is known as the "schoolhouse road" because it runs past a schoolhouse in the southern part of Medina. This schoolhouse is two blocks south of Highway No. 10 as it passes through the city, and two or three blocks west of the point where the road joins Highway No. 10 as it continues east from the south end of the curve. The defendant contends that Knoepfle did not drive eastward out of Medina on Highway No. 10, as he testifies, but drove eastward from the schoolhouse on the graveled road and collided with the Suko car near the intersection of the highway and the graveled road. This contention rests largely on the testimony of two witnesses who state they saw the Knoepfle car proceeding eastward from the schoolhouse shortly before the accident. This testimony, by inference, creates a conflict with that of Knoepfle which is within the province of the jury to resolve and is not conclusive as a matter of law.

█ The credibility of witnesses and the probability of their stories are questions for the jury and not the appellate court. Smith v. Riedinger, N.D., 95 N.W.2d 65; Nimmins v. Forsberg, 70 N.D. 417, 294 N.W. 663; Mikkelson v. Snider, 43 N.D. 416, 175 N.W. 220.

█ An expert witness was produced by the plaintiff. Another expert witness was called by the defendant. The examinations and cross-examinations were extensive. The experts did not agree as to the opinions expressed although the inquiries of counsel involved substantially the same basic questions. It is the general rule that the credibility of expert witnesses and the weight to be given to their testimony are for the determination of the triers of facts, in this case the jury. Jacobson v. Mutual Benefit Health & Accident Association, 70 N.D. 566, 296 N.W. 545; Serbousek v. Stockmen Motors, Inc., N.D., 106 N.W.2d 879; Klundt v. Pfeifle, 77 N.D. 132, 41 N.W.2d 416; In re Heart River Irrigation District, 78 N.D. 302, 49 N.W.2d 217; Rogers on Expert Testimony, Third

Edition, Section 306. The testimony of these witnesses is not conclusive as to any issue.

■ Our examination of the record, including the transcript of the testimony and the exhibits, leads us to the conclusion that the questions of the negligence of the defendant and the contributory negligence of the plaintiff were questions to be determined by the jury and that this court cannot say that the evidence is insufficient to justify the verdict.

We now pass to a consideration of the appellant's specifications of errors of law occurring at the trial. The appellant charges that the court erred in refusing to admit in evidence a motion picture film that was offered as an exhibit in connection with the examination of the expert witness, Stanley S. Johnson. This witness was the holder of a Bachelor of Science degree in civil engineering from the University of North Dakota, and at the time of the trial was a consulting engineer who had made a study of the forces and other items that are involved in connection with automobile collisions. The witness testified that he had studied photographic exhibits in evidence that showed the positions of the cars after the accident, together with plats and drawings indicating the surroundings, had conducted demonstrations or experiments with model cars to show what would happen when they came in contact in different positions, and that the demonstrations or experiments related to the matter of the impact of cars and their reaction after impact. He had taken a motion picture of these model car experiments. After the film of that picture had been identified by the witness, and the conditions under which it had been made and the film developed had been described, the film was offered in evidence. Objections were made to the foundation, the competency and the relevancy of the proposed exhibit, and sustained. Counsel for the appellant then offered to show the film on a screen, to the jury, as visible demonstrative evidence. This offer was resisted and objected to and the objection sustained. The appellant argues that these rulings by the trial court are erroneous.

■ We will assume, for the purposes of this discussion, that evidence of the conduct and result of a competent and relevant experiment made out of the presence of the jury by an expert may be admitted through the medium of a moving picture, and go directly to the question of admissibility of any type of evidence pertaining to the experiment under consideration. See International Union, etc. v. Russell, 264 Ala. 456, 88 So.2d 175, 62 A.L.R.2d 669, and Annotations. Evidence of relevant experiments is admissible where they are shown to have been made under conditions substantially similar to those prevailing at the time of the occurrence to which they relate. State v. DeZeler, 230 Minn. 39, 41 N.W.2d 313, 15 A.L.R.2d 1137; Tuite v. Union Pacific Stages, Inc., 204 Or. 565, 284 P.2d 333; Barnes v. Labor Hall Association, 51 Wash. 2d 421, 319 P.2d 554; State v. McMurray, 47 Wash.2d 128, 286 P.2d 684; Navajo Freight Lines, Inc. v. Mahaffy, 10 Cir., 174 F.2d 305; 20 Am.Jur., Evidence, Sections 756 and 758; 32 C.J.S. Evidence §§ 587 and 590. The foregoing authorities also support the rule that the admission of evidence of experiments is primarily within the discretion of the trial court and the exercise of that discretion will be disturbed by an appellate court only when it has been abused.

■ The experiment that is involved here was conducted with model cars. The witness Johnson stated that the experiment related to the matter of the impact of cars and their reaction after the impact, but there is no evidence that even remotely connects it with conditions and circumstances prevailing at the time of the accident. Evidence of this experiment is clearly inadmissible.

The court did not err in refusing to admit the film in evidence or permit it to be shown on a screen to the jury as a visual demonstration of how the accident could have happened or in explanation or confirmation of the opinion of the expert witness.

The court instructed the jury as follows:

"Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway.

"Drivers of vehicles proceeding in opposite directions shall pass each other on the right, and upon roadways having width for not more than one line of traffic in each direction each driver shall give to the other at least one-half of the main traveled portion of the roadway as nearly as possible.

"Whenever any roadway has been divided into two or more clearly marked lanes for traffic, a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."

These instructions are correct statements of the law and are taken from our statutory rules of the road. See Sections 39–10–08, 39–10–09 and 39–10–17, NDCC. The appellant singles out the last paragraph of this instruction as erroneous because of what we said with respect to a similar instruction in Knoepfle v. Suko, N.D., 108 N.W.2d 456, 465, wherein we stated that under the facts disclosed by the testimony in that case:

"The instruction complained of should not have been given without cautioning the jury, that before they could apply it, they would have to find as a fact from the evidence in the case that the roadway was divided into [two] clearly marked lanes. Without

such caution the jury might well have assumed that, in the trial judge's view of the evidence, the roadway was clearly marked."

According to the testimony of the highway patrolman there was no yellow line where the cars were sitting, but there was a yellow line on either side of where the cars stood which continued down the highway in both directions. These lines were visible. There was a break in the yellow line right where the cars were sitting. There were, in fact, two lines east of the accident. The yellow line was broken. The black or broken spaces were at least the length of a car. He saw only one yellow line west of the cars. The sheriff of Stutsman County arrived at the scene of the accident about a half hour after it happened. He described two faint broken yellow lines east of where the cars were sitting. He does not recall whether there were one or two yellow lines to the west. The witnesses agree that as to the broken yellow lines, one was eleven feet from the north edge of the blacktop and the other eleven feet nine inches from the north edge.

■■ There is a difference in both facts and instructions between the present case and Knoepfle v. Suko, supra. In this case the evidence definitely shows the extension of the yellow line or lines in both directions from where the cars stood, and there is no material conflict in the evidence regarding them. In the Knoepfle case it did not appear that a yellow line extended west of the location of the cars. In that case the instructions concerning the rules of the road were more voluminous and contained two references to laned highways. In this case instructions pertaining to the points involved are more concise and, as will be noted from our quotation, the court told the jury, without emphasis or repetition as to either part of the instruction, that a vehicle shall be driven upon the right half of the roadway, and that whenever a roadway has

been divided into two clearly marked lanes, a vehicle shall be driven as nearly as practicable entirely within a single lane. While the facts as gleaned from the testimony may leave room for argument as to whether the lanes were "clearly marked," we believe that the manner in which the jury was instructed did not emphasize either rule nor indicate that the court favored the application of one rule over the other in the facts of this case. If the plaintiff had desired a specific instruction in the nature of that for which he now contends, he could have requested it. In the absence of a request the failure to so instruct does not amount to misinstruction and does not constitute reversible error. In so holding we are following the well-established rule that where an instruction is correct as far as it goes, error cannot be assigned on the ground that it is not sufficiently full or explicit unless a request is made for a more specific and comprehensive instruction. McGregor v. Great Northern Railway Co., 31 N.D. 471, 154 N.W. 261, Ann.Cas.1917E, 141; Buchanan v. Occident Elevator Co., 33 N.D. 346, 157 N.W. 122; Halverson v. Lasell, 33 N.D. 613, 157 N.W. 682; Kroeger v. Safranek, 165 Neb. 636, 87 N.W.2d 221. We would further point out that this court has recognized an exception to this rule where nondirection amounts to misdirection. Burkstrand v. Rasmussen, 77 N.D. 716, 45 N.W.2d 485; Mousel v. Widicker, N.D., 69 N.W.2d 783, 53 A.L.R.2d 884. But in this case the claimed omission to further instruct does not amount to misdirection.

In Harmon v. Haas, 61 N.D. 772, 241 N.W. 70, 72, 80 A.L.R. 1131, we said:

"There is a difference between nondirection and misdirection, and, unless the former amounts to the latter it is not reversible error. If a party desires more complete and specific instructions on any special point it is his duty to request such instruction. Huber v. Zeiszler, 37 N.D. 556, 164 N.W. 131;

Andrieux v. Kaeding, 47 N.D. 17, 28, 181 N.W. 59; Farmers' Exchange State Bank [of Sanger, N.D.] v. Iverson, 51 N.D. 909, 201 N.W. 509. 'It is not compulsory upon a trial court to present every issue that may be raised by the testimony, without a request directing the attention of the court thereto, so long as the main issues, the principal contentions of the pleadings, are intelligibly defined and submitted.' North Star Lumber Co. v. Rosenquist, 29 N.D. [566] 568, 574, 151 N.W. 289, 291."

█ The court instructed the jury that if they found that the negligence, if any, of Knoepfle was the sole proximate cause of the collision, their verdict should be for the defendant, and added:

"But if you find by a fair preponderance of the evidence that the negligence of the defendant driver Reinhold Suko was also a proximate cause as hereinbefore defined of the collision and of the damages sustained by the plaintiff, then your verdict should be for the plaintiff, even though you find that the negligence of Ben Knoepfle may have contributed thereto."

It is argued that this instruction is not a complete statement of the law because if Knoepfle and Fisher were engaged in a joint enterprise, Fisher would be charged with the negligence of Knoepfle, and for the further reason that if Fisher himself was negligent in failing to warn or protest to Knoepfle if he had an opportunity and duty to do so, he could not recover. The challenge to this instruction is not well taken. The evidence would not warrant the finding of a joint enterprise on the part of Fisher and Knoepfle. Fisher was clearly a guest. The contributory negligence, if any, of a host driver of an automobile is not imputable to his guest, but if the guest himself is guilty of contributory negligence,.

it will bar his recovery. Wilson v. Oscar H. Kjorlie Co., 73 N.D. 134, 12 N.W.2d 526. There is no evidence that would warrant the finding of negligence on thè part of Fisher. The assumption that Fisher might have had an opportunity to warn Knoepfle or the duty to protest the manner in which he was driving is purely speculative and is not supported by the record.

Our conclusion is that the evidence is sufficient to support the verdict and that the challenges to the rulings of the court during the trial and to the instructions cannot be sustained as errors of law. The judgment and order appealed from are affirmed.

SATHRE, C. J., and BURKE, TEIGEN and STRUTZ, JJ., concur.