STATE of North Dakota, Plaintiff
and Appellee,

v.

Tarry HENDRICKSON, Defendant
and Appellant.

Crim. No. 525.

Supreme Court of North Dakota.

Feb. 25, 1976.
Rehearing Denied March 24, 1976.
As Amended April 2, 1976.

Richard L. Schnell, State's Atty. for Morton County, Mandan, for plaintiff and appellee.

Daniel J. Chapman, Bismarck, for defendant and appellant.

ERICKSTAD, Chief Justice.

Norman Evans of the North Dakota Highway Patrol arrested Tarry Hendrickson after he had observed Tarry's car drift completely into the east-bound lane of Memorial Bridge while Tarry was proceeding west. He testified that Tarry subsequently failed to stop at a stop sign and crossed the center line on Highway 10 between Bismarck and Mandan (commonly known as the "Strip"), forcing an oncoming car onto

the shoulder of the two-lane highway. After stopping Tarry, Evans noted the odor of alcohol, but he observed "nothing in particular" as Tarry walked from his own vehicle to Evans' patrol car.

Tarry consented to a blood alcohol test after Evans advised him that he was arresting him for operating a motor vehicle while under the influence of intoxicating beverages and asked him if he would submit to a blood test. During the ride to Mandan Hospital, Evans noticed that Tarry's eyes were bloodshot and again detected the odor of alcohol.

Evans advised Tarry of his rights to remain silent and to have an attorney present. Tarry responded to most of the officer's questions. While Tarry's speech was not slurred, it was "mush-mouthed," described by Evans as "more an example of having something dry in the mouth" with "a muffle effect, but not slurred."

Evans stopped Tarry at 1:45 a. m. They reached the hospital at 2:00 a. m. Carol Schmitt, a laboratory technician, was called at 2:15 a. m. and completed drawing the blood at 2:28 a. m.

On appeal from judgment following a jury verdict of guilty and from denial of a motion for new trial, Tarry specifies three instances of error.

■ He asserts that the trial court erred by allowing a medical technologist from the state toxicology lab to testify as to her observations of an experiment relating to the effects of alcohol upon a group of volunteers. In determining whether a trial court has committed error which warrants a new trial, we look to the relation of the error to the result of the trial. "We must consider the entire record and the probable effect of the actions alleged to be error in light of all the evidence in order to determine whether substantial rights were affected. *State v. Johnson,* 231 N.W.2d 180, 185 (N.D.1975)." *State v. Allen,* 237 N.W.2d 154, 162 (N.D.1975). Before we will reverse a verdict on the basis that the error committed was not harmless, prejudice must be shown, substantial injury must

have resulted to the defendant's case, and a different decision is probable absent the error. Since the error alleged here is not of such a character that prejudice normally results, nor is it alleged to affect Tarry's constitutional rights, the standard to apply is whether in all probability the admission of the testimony affected the jury's verdict. *Id.; State v. Marmon,* 154 N.W.2d 55, 64 (N.D.1967); *see* Rule 52, N.D.R.Crim.P., and commentary thereto. We do not believe that it did.

Tarry asserts, however, that the testimony relating to Ms. Lee's observations of the experiment should have been excluded because of our decisions in *Fisher v. Suko,* 111 N.W.2d 360 (N.D.1961), and *Larson v. Meyer,* 135 N.W.2d 145 (N.D.1965). The situations in those cases are inapposite to Tarry's situation.

In *Larson* we determined that the trial court did not abuse its discretion in refusing to admit evidence of an experiment relating to a tractor attempting to pull a truck from a ditch. The accident had occurred in May, while the experiment was conducted in December. The experiment occurred on a hard-surfaced road, while the accident occurred in a farmyard.

"We held in *Fisher v. Suko,* N.D., 111 N.W.2d 360, that evidence of relevant experiments is admissible where they are shown to have been made under conditions substantially similar to those prevailing at the time of the occurrence to which they relate * * *" *Larson v. Meyer, supra,* 135 N.W.2d at 165.

*Fisher* also involved the exclusion by the trial court of evidence relating to an experiment. That experiment was conducted by an expert witness, a consulting engineer who had made a study of the forces involved in automobile collisions. While we noted that evidence of relevant experiments is admissible "where they are shown to have been made under conditions substantially similar to those prevailing at the time of the occurrence to which they relate," we approved the trial court's action because there was "no evidence that even remotely connects [the model car experiment] with

conditions and circumstances prevailing at the time of the accident." *Fisher v. Suko, supra,* 111 N.W.2d at 364.

In both *Larson* and *Fisher* the experiments were not shown to be reliable and valid recreations of what really happened. Both involved matters not ordinarily within lay experience or knowledge. Both were graphic and likely to play a substantial role in the juries' deliberations.

In the instant case, Ms. Lee was qualified as an expert in the operation of a gas chromatograph. During direct examination by the state's attorney, she did not testify to her observations concerning the effect of alcohol on individuals. That topic was pursued by defense counsel when he recalled Ms. Lee.

"Q. [Mr. Chapman] Are you familiar with the term tolerance as used in connection with the effect that alcohol [has] upon any particular individual?

"A. Some people who are regular drinkers are able to compensate in certain ways for the effects of alcohol on their body, such as they may walk with their feet a little wider apart so they don't appear to have an impairment in walking, or they may speak more slowly so that the slurring of words is not as apparent."

\* \* \* \* \* \*

"Q. (Mr. Chapman continuing) I started to ask the question, Ms. Lee, if tolerance is not actually the ability of the organism to withstand the effects of alcohol, and it may differ from one individual to another?

"A. Alcohol does have different effects on different individuals.

"Q. Thus the same alcohol in the blood may not have the same effect in the two different people; isn't that correct?

"A. That is correct."

\* \* \* \* \* \*

"[Mr. Chapman restating a question] The symptoms of having consumed alcohol, may be different even though the blood—the blood alcohol rate is the same, depending upon how long after the alcohol has been consumed? Am I making myself clear to you?

"A. I don't believe in an individual, it would make any difference as the time, amount of time, after the alcohol was consumed as to a certain rate. I think within an individual, a certain level would have a certain effect.

"Q. That's your training; is that right?

"A. This is my opinion.

"Q. There could be other opinions; could there not?

"A. Yes."

When the state's attorney asked whether Ms. Lee's training covered the effect of alcohol on various people, she responded that she had been an observer to a controlled study with 26 subjects but that none of the subjects were "higher than .10, or maybe slightly higher."

"Q. [Mr. Schnell] Would you state the things you observed about the individuals?

"MR. CHAPMAN: We are going to object as to immaterial.

"THE COURT: Well, I think this whole question of how this affects the person and what it does to him is brought out by you on your cross-examination as when you recalled this witness. I think now to cut it short would be a denial of the State's right to present the knowledge of this witness, and I am going to overrule your objection.

"You may answer the question.

"THE WITNESS: Would you repeat the question?

"Q. (Mr. Schnell continuing) The question was: What did you observe about these people at the level that they did reach?

"A. Some of them had difficulty in coordination. Their inhibitions were decreased. Their judgment was not—they—how shall I say it? Their judgment wasn't quite as good."

"Q. How did you measure their judgment?

"MR. CHAPMAN: I want the record to show a motion for a mistrial on the basis of permitting that witness to testify as she did. I think there is no showing that there is any correlation between the time, the type of individual, the consumption of food, relation to this case, and I think it is so prejudicial that it is grounds for a mistrial.

"MR. SCHNELL: Your Honor, Counsel for the Defendant opened this can of worms; I didn't.

"MR. CHAPMAN: I don't agree with that. I would like the record to show that we did not go into what a person was like at .10, who may be 200 pounds, or 100 pounds, what time period this was, the tolerance of those individuals. It has nothing to do with this case.

"THE COURT: I believe one of the most important things, and it's been attempted to do all afternoon is to educate and inform the jury of the effects of alcohol on the system of a person in general, and this Defendant, and I do believe you opened this area. I am going to deny your motion for a mistrial on those grounds. You may continue.

"THE WITNESS: Would you repeat the question?

"Q. (Mr. Schnell continuing) You indicated judgment was one of the things.

"A. One of the things I felt how—I felt that I could tell their judgment was impaired that these law enforcement officers, and a couple of them—they were to drink over a period of, I believe, a couple of hours, and then they had to wait for a time so that they would reach their peak alcohol level, and some of them, oh, they were—they took, they hid some cans of beer so they would have been able to drink longer than they should have. I think for police officers to do this—if they hadn't been drinking, they wouldn't have gotten—they wouldn't have gotten into trouble again.

"MR. CHAPMAN: I move that be stricken as it is not responsive to the question. It is a self-serving voluntary statement on the part of this witness.

"MR. SCHNELL: I believe it shows her observations.

"THE COURT: I believe the question was also not responsive. I would strike it from the record, the answer. To admonish the jury to disregard the last statement of the witness. You are to treat it as if it had not been uttered."

Following an objection by defense counsel to a question by the state's attorney concerning the blood alcohol level at which Ms. Lee began to observe differences in judgment and coordination of the controlled study subjects, as well as a general objection to further questioning, the trial court concluded, "[W]e are not progressing here, and for that reason, I will sustain this [general] objection to any more questions to this witness concerning laboratory control tests."

The denouement of the questioning of Ms. Lee illustrates several features of her testimony: it was essentially cumulative, nonexpert, and of limited relevance. Ms. Lee was qualified as an expert in the use of a gas chromatograph, not as an expert in the behavioral effects of alcohol. Neither Tarry nor the State, when the former initiated and the latter pursued this line of inquiry, sought to qualify Ms. Lee as an expert in the latter area. She testified as an observer to a controlled experiment to matters that lie within lay knowledge and experience and admitted that the same amount of alcohol in the blood does not have the same effect in two different people. The essence of the testimony objected to is that those whom Ms. Lee observed seemed to lose coordination, become less inhibited, and tended to have their judgment affected with the consumption of alcohol. That the consumption of alcohol adversely affects judgment, reduces reaction time, dulls reflexes, and diminishes inhibitions is commonly known and accepted, as well as scientifically verified. See, e. g., 2 Schwartz, Trial of Automobile Accident Cases, § 914 (3d ed. 1972). Under Section 31–10–02(84), N.D.C.C., the jury and the court were entitled to take notice "[o]f such matters of common knowledge and science

as may be known to all men of ordinary understanding and experience."

██ "Relevant evidence" has been defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, Federal Rules of Evidence, effective July 1, 1975, Pub.L. 93–595, § 1, January 2, 1975, 88 Stat. 1926. While we do not see the relevancy of Ms. Lee's testimony to the determination of whether Tarry was himself under the influence of intoxicating beverages, neither do we conclude that it resulted in prejudice to Tarry's substantial rights. State v. Allen, supra, 237 N.W.2d at 162; State v. Johnson, 231 N.W.2d at 185; Rule 52(a), N.D.R.Crim.P. Therefore, admission of the testimony as to matters commonly known and understood was harmless and is not a basis for granting a new trial.

Having concluded that Ms. Lee's testimony concerning her observations of the controlled laboratory study was harmless error, we must next consider Tarry's assertion that the trial court improperly instructed the jury on the nature of the statutory presumption. Section 39–20–07, N.D.C.C., reads in pertinent part as follows:

"39–20–07. Interpretation of chemical tests.—Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor, evidence of the amount of alcohol in the person's blood at the time of the act alleged as shown by a chemical analysis of his blood, breath, saliva or urine is admissible. For the purpose of this section:

*　　*　　*　　*　　*　　*

"3. A person having, at that time, ten-hundredths of one percent or more by weight of alcohol in his blood shall be presumed to be under the influence of intoxicating liquor;

*　　*　　*　　*　　*　　*"

N.D.C.C.

The trial court instructed the jury on the presumption as follows:

"Upon the trial of a criminal action arising out of acts alleged to have been committed by any person while driving a motor vehicle while under the influence of intoxicating liquor, evidence of the amount of alcohol in the person's blood, at the time of the act alleged, as shown by a chemical analysis of his blood, is admissible. For this purpose, a person having, at any time, ten-hundredths of one percent or more by weight of alcohol in his blood is presumed to be under the influence of intoxicating liquor.

"A presumption is an inference of a fact not certainly known, which the law expressly directs to be drawn from particular facts or circumstances in the case. It serves as evidence and governs you in finding the facts unless it is disproved by evidence or if, from the evidence, you have a reasonable doubt as to existence of the presumed fact, in which case the presumption is rebutted and ceases to operate.

"So, in your deliberations, you must consider all of the evidence, and then, if you have a reasonable doubt as to whether Tarry James Hendrickson at the time of the alleged offense, was then, in fact, under the influence of intoxicating liquor, you should return a verdict of not guilty." [Underlining indicates parts of instructions alleged to be error.]

The trial court also instructed the jury that

"The burden of proof resting upon the State is satisfied only if the evidence shows, beyond a reasonable doubt, the following essential elements of the offense charged:

"(1) That on the 15th day of September, 1974, the Defendant, Tarry James Hendrickson, was driving or in actual physical control of a vehicle upon a highway in Morton County, North Dakota; and

"(2) That at said time and place the Defendant, Tarry James Hendrickson,

was under the influence of intoxicating liquor."

Tarry objected to the entire instruction relating to presumptions. It is unclear whether "at *any* time" was mistakenly substituted for "at *that* time" when the page of instructions was re-typed to conform to North Dakota Pattern Jury Instruction No. 1030. Since it appears that Tarry's counsel was not given an opportunity to read the re-typed page, we cannot conclude that he waived objecting to language that may not have existed on the original page.

■ North Dakota has a well-established policy that instructions must be considered as a whole and that if when so considered they correctly advise the jury as to the law, they are sufficient although parts of them standing alone may be erroneous or insufficient. *State v. Fischer,* 231 N.W.2d 147, 159 (N.D.1975); *State v. Steele,* 211 N.W.2d 855, 862 (N.D.1973); and *State v. Williams,* 150 N.W.2d 844, 847 (N.D.1967) (see cases cited therein).

■ We note the trial court's instructions, *supra,* that "evidence of the amount of alcohol in the person's blood, at the time of the act alleged" is admissible, that the jury must consider all of the evidence and find Tarry not guilty if the evidence raised a reasonable doubt "whether [he] at the time of the alleged offense, was then in fact, under the influence of intoxicating liquor," and that the essential elements of the offense included Tarry's having been driving or in actual physical control of a vehicle upon a highway and that "at said time and place the Defendant . . . was under the influence of intoxicating liquor." In light of the entire charge, we do not believe that the erroneous part of the instruction relating to "at any time" so contaminated the jury's perception of the law that a new trial should result.

■ We also note that Tarry had testified that he had been drinking beer throughout the evening (from 8 to 12 cans), that Officer Evans noticed Tarry's car drift completely into the opposite lane once and across the center line another time, and

that Evans detected the odor of alcohol when he stopped Tarry. It is also clear that Tarry had nothing to drink during the interval. Thus, the interval of 45 minutes from Tarry's apprehension until his blood was drawn is not significant in this case.

See, in this regard, *State v. Kaloustian,* 212 N.W.2d 843 (N.D.1973), where the chain of circumstances differed in that no one had seen the defendant until hours after he had been driving (a sufficient period for him to have consumed enough alcohol to raise his blood alcohol level beyond the presumption level). *Cf. State v. Ghylin,* 222 N.W.2d 864 (N.D.1974).

Tarry asserts as his final specification of error that the instruction concerning the operation of the presumption unconstitutionally shifted the burden of proof to him. In support of his contention, he cites us to *State v. Hansen,* 203 N.W.2d 216 (Iowa 1972). In *Hansen* the Iowa Supreme Court held that the following instruction constituted error:

"'The rule established by the foregoing statute permits the jury to infer that the defendant was under the influence of an alcoholic beverage, if it is found by the jury that at the time defendant was driving an automobile on the public highway his blood contained more than ten one-hundredths of one percentum by weight of alcohol.

"'However, such inference is not conclusive, but is rebuttable. It may be overcome or rebutted by evidence to the contrary.'" *Id.,* at 218.

The Iowa Supreme Court concluded that the language "may be overcome or rebutted by evidence to the contrary" was equivalent to

"* * * instructing the jury that the presumption is conclusive *unless* rebutted by evidence to the contrary; and we say this is error. The blood test results do not become a verity simply because they go unchallenged. Like all evidence, this 'presumptive evidence' may be accepted or rejected by the jury. Defendant's silence on the subject lends no added strength to the State's proof nor does it

ease the burden of establishing guilt beyond a reasonable doubt. * * *" *Id.,* at 220.

■ Standing alone the trial court's phrase in the instant case that the presumption "serves as evidence and governs you in finding the facts unless it is disproved by evidence" would probably be as objectionable as the instruction in *Hansen.*[1] But the quoted phrase in the North Dakota instruction is followed immediately by an alternative: "or if, from the evidence, you have a reasonable doubt as to the existence of the presumed fact, in which case the presumption is rebutted and ceases to operate." This saving phrase, absent in *Hansen,* seems to us to have been designed to let the jury deem the presumption inoperable because *any* of the evidence, regardless of its source, raises a reasonable doubt as to the existence of the presumed fact. Since we conclude that the instruction was not erroneous. we need not apply the *Chapman* rule, fn. 1, *supra,* as adopted by us in *State v. Hilling,* 219 N.W.2d 164, 172 (N.D.1974).

For the reasons stated, we find that certain testimony admitted was not error resulting in prejudice; that the instructions

as a whole did not unconstitutionally shift the burden of proof to Tarry; and that no reversible error occurred.

We affirm.

SAND, PAULSON, PEDERSON and VOGEL, JJ., concur.

---

1. In *State v. Hutton,* 207 N.W.2d 581 (Iowa 1973), another trial court was reversed. The trial court had used the instruction found wanting in *Hansen* and added a paragraph reminding the jury that the burden of proof remained with the State. The Supreme Court (en banc) was "unable to find [that] the erroneous instruction was harmless beyond a reasonable doubt, applying the standard required by Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)." 207 N.W.2d at 583.

The Iowa court regards shifting the burden of proof as affecting a defendant's substantial rights, and, therefore, applies the *Chapman* test requiring a declaration that errors affecting substantial rights be harmless beyond a reasonable doubt before denying a reversal. North Dakota has adopted the *Chapman* rule in *State v. Hilling,* 219 N.W.2d 164, 172 (N.D.1974). Since we conclude, *infra,* that the instruction did not shift the burden of proof in this case, we have no error to which we must apply the *Chapman* test.

In other instances, instructions erroneously given have resulted in violations of the directive in *Bollenbach v. United States,* 326 U.S. 607, 613, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946), that "[a] conviction ought not to rest on an equivocal direction to the jury on a basic is-

sue." See our discussion in *State v. Haakenson,* 213 N.W.2d 394, 401 (N.D.1973), as well as the following cases: *United States v. Neilson,* 471 F.2d 905 (9th Cir. 1973), and *United States v. Bagby,* 451 F.2d 920 (9th Cir. 1971) (instructions relating to essential elements of crime charged); *United States v. Meade,* 491 F.2d 592 (3d Cir. 1974) (entrapment defense); *United States v. Silver,* 457 F.2d 1217 (3d Cir. 1972) (incorrect instructions so intertwined with correct instructions as to negate the effect of the latter); and *Chapman v. California, supra,* 386 U.S. at 44, 87 S.Ct. at 838 (Justice Stewart concurring) (unconstitutional presumptions).

North Dakota has recently spoken to the subject of presumptions by statute, Section 12.-1–01–03(4), N.D.C.C. In light of that statute, we urge the courts of this State and the Joint Committee of the North Dakota Judicial Council and the State Bar Association (which prepared the pattern instruction on presumptions) to scrutinize the instruction.

We call their attention to Rule 303, Uniform Rules of Evidence (1974); Rule 303 (unenacted), Fed.Rules of Evidence Pamph. (1975); *United States v. Gainey,* 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965); and 1 Weinstein, Evidence, ¶ 303[07] (1975), as basic references.